TOWN OF TRYON v. DUKE POWER COMPANY.

(Filed 4 November, 1942.)

**1. Declaratory Judgment Act § 1—**

The broad terms of the Declaratory Judgment Act do not confer upon the court an unlimited jurisdiction; and the court will not entertain an *ex parte* proceeding or a proceeding which, while adversary in form, yet lacks the essentials of a genuine controversy.

**2. Declaratory Judgment Act §§ 2a, 2b—**

While the courts will not decide mere academic questions which are altogether moot, it is required only (by Declaratory Judgment Act) that plaintiff shall allege and show that a real controversy, arising out of their opposing contentions as to their respective legal rights and liabilities, exists between, or among the parties, and that the relief prayed for will make certain that which is uncertain and secure that which is insecure.

**3. Declaratory Judgment Act § 2c—**

It need not be alleged and shown by plaintiff, in an action under the Declaratory Judgment Act, that the question in difference between the parties is one which might be the subject of a civil action at the time, or that plaintiff's rights have been invaded or violated, or that defendant has incurred liability to plaintiff prior to the action.

**4. Declaratory Judgment Act § 2a—**

A mere difference of opinion between the parties as to whether plaintiff has the right to purchase or condemn, or otherwise acquire the utility of the defendant, without a declaration in the complaint of plaintiff's intent to exercise its rights under the franchise contract, does not constitute a controversy under the Declaratory Judgment Act. Public Laws 1931, ch. 102.

APPEAL by plaintiff from *Pless, J.,* at Chambers, 8 August, 1942. From POLK. Affirmed.

The town of Tryon brought this proceeding under the Declaratory Judgment Act, chapter 102, Public Laws of 1931, to have declared and determined certain rights which it claimed the right to exercise against the defendant under a contract alleged to have been made between the town and defendant's predecessor in title to certain utilities.

It set up a franchise granted to Ralph C. Erskine and his associates operating the Tryon Electric Service Company and the ordinance granting the franchise, enacted by the governing body of the town at a meeting of the board in 1913 and subsequently confirmed.

Under this franchise the Tryon Electric Service Company supplied electric current to the residents of the town of Tryon, and maintained facilities, apparatus, and equipment in connection with the operation of the business. Later, the Duke Power Company, the defendant, succeeded to all the rights of Erskine and his associates under the ordinance and franchise, and the complaint alleges that because thereof the contract continues and exists between plaintiff and defendant.

Section 6 of the franchise, to which particular attention is directed, reads as follows:

"Section 6. That if, at any time in the future, the Town of Tryon shall decide to own and operate its own electrical lighting plant; it may first acquire, either by purchase or condemnation the property of the persons or corporations who shall then be operating and serving the public by virtue of this franchise. If the said town cannot agree with the owners upon the terms of purchase, then it may have said property valued by three commissioners to be appointed by the Judge of the Superior Court, and condemn the same to the public use, as provided by Chapter 86 of the public laws of 1911."

Plaintiff asks the court to render a declaratory judgment construing the contract and franchise, and "determining whether or not in the event the Town of Tryon decides to own and operate its own electrical lighting plant, it may first acquire either by purchase or condemnation the property of the defendant corporation, which is now operating and serving the public in the Town of Tryon by virtue of the franchise above referred to, and determining the rights of the Town of Tryon, with reference to the purchase of the property of the defendant referred to in paragraph 6 of said ordinance."

The defendant answered, admitting that it had succeeded to the rights and obligations of the Tryon Electric Service Company franchise, whatever the legal effect might be, and setting up a further defense not necessary to summarize here.

In this answer defendant denies the right of the plaintiff "to have said franchise, and particularly section 6 thereof, construed by the court in this proceeding as requested."

Upon notice, the matter came before his Honor, J. Will Pless, Jr., resident judge of the Eighteenth Judicial District, at Chambers in Marion, North Carolina, for judgment as a matter of law upon the pleadings. At that time it was the opinion of the court that as the complaint then stood, the plaintiff did not have the right to a declaratory judgment, since it had made no "declaration of a purpose to pursue any rights which it might have to acquire defendant's property pursuant to section 6 of the franchise." Thereupon, the court permitted the plaintiff to amend its complaint as follows:

"8. That the plaintiff requested the defendant to fix a price on its transmission lines and property mentioned and referred to in the aforesaid ordinance and franchise; that the defendant declined to do so; that in so declining the defendant contended that the plaintiff did not have the right to acquire said property in the manner set forth in said ordinance and franchise or in any manner; that there is an actual controversy existing between the plaintiff and the defendant respecting their rights under the said ordinance and franchise in that the plaintiff contends that under the same it has the right to purchase and acquire the transmission lines and property of the defendant mentioned and referred to therein, whereas the defendant contends to the contrary.

"9. That as long as the questions and differences exist between the plaintiff and the defendant regarding the rights of the plaintiff under the aforesaid contract and franchise, the plaintiff will be seriously handicapped in making financial arrangements to exercise the rights it claims under said contract and franchise, and the plaintiff, therefore, desires to have said questions adjudicated and determined, all to the end that the plaintiff may exercise its rights under said contract and franchise in accordance with the decision of this Court regarding said rights."

The defendant answered the amendments to the complaint, admitting that the town of Tryon had asked it to name a price on its properties, and it had declined to do so, and that it had denied the right of the town to condemn its property because of the repeal of chapter 86, Public Laws of 1911; defendant further admitted that there was a difference of opinion between plaintiff and defendant respecting plaintiff's right to condemn defendant's property, which right it denied; and averred that the effect of such difference of opinion upon plaintiff's financial arrangements "when and if undertaken" was conjectural and uncertain.

Defendant renewed the objection that upon the facts alleged, the plaintiff was not entitled to a declaratory judgment and moved to dismiss the action.

Judge Pless then entered a judgment finding certain facts and holding that the amendments above quoted "did not constitute a declaration of intent on the part of the plaintiff to exercise any rights which it might

have under section 6 of the defendant's franchise" (counsel for plaintiff having stated that the plaintiff had not authorized him to allege such intent), and dismissed the action.

Plaintiff appealed, assigning error.

*McCown & Arledge for plaintiff, appellant.*
*W. S. O'B. Robinson, Jr., J. E. Shipman, and W. B. McGuire, Jr., for defendant, appellee.*

SEAWELL, J.   Section 1 of the Declaratory Judgment Act, chapter 102, Public Laws of 1931, empowers courts of record within their respective jurisdictions "to declare rights, status, and other legal relations," and section 2 has special relation to such "rights, status or other legal relations arising out of a municipal ordinance, contract or franchise," with special relation to the construction or validity thereof; but the apparent broad terms of the statute do not confer upon the court an unlimited jurisdiction of a merely advisory nature to construe and declare the law.   Before a declaratory judgment may be obtained, the existence of those conditions upon which the jurisdiction of the court may be invoked must appear.   Under the statute the court will not entertain an *ex parte* proceeding or a proceeding which, while adversary in form, yet lacks the essentials of genuine controversy.

The difference between the operation of the Declaratory Judgment Act and that of C. S., 626, providing for the submission of controversies without action is pointed out in *Wright v. McGee,* 206 N. C., 52, 173 S. E., 31, by *Justice Connor,* writing the opinion of the Court: "Prior to its enactment, the courts of this State had no jurisdiction to render advisory opinions with respect to, or judgments declaring the rights and liabilities of parties to actions or proceedings on an agreed statement of facts.   *Hicks v. Greene County,* 200 N. C., 73, 156 S. E., 164.   Such jurisdiction was not conferred by C. S., 626; *Burton v. Realty Co.,* 188 N. C., 473, 125 S. E., 3.   Actions or proceedings in which on the facts agreed there was no real controversy as to questions of law arising on such facts, which might be the subject of a civil action, were dismissed, for the reason that the Court was without jurisdiction to determine such questions.   *Hicks v. Greene County, supra; Burton v. Realty Co., supra.* The distinction between C. S., 626, and chapter 102, Public Laws of North Carolina, 1931, is obvious.  In *Light Co. v. Iseley,* 203 N. C., 811, 167 S. E., 56, it is said: 'It need not be alleged in the complaint or shown at the trial, in order that the Court shall have jurisdiction of an action instituted under the authority and pursuant to the provisions of chapter 102, Public Laws of North Carolina, 1931, that the question in difference between the parties is one which might be the subject of a

civil action at the time the action was instituted. It is not required for purposes of jurisdiction that the plaintiff shall allege or show that his rights have been invaded, or violated by the defendants, or that the defendants have incurred liability to him, prior to the commencement of the action.' "

In accord with the foregoing is *Green v. Inter-Ocean Casualty Co.,* 203 N. C., 767, 774, 167 S. E., 38, and other decisions of this Court, and current decision in the majority of jurisdictions having similar laws. 16 Am. Jur., 280, sec. 7, and cited cases. But conceding that the jurisdiction has been somewhat broadened to serve the commendable purpose of the law in preserving rights before they are actually invaded and avoiding liabilities before they are incurred—*Green v. Inter-Ocean Casualty Co., supra; Light Co. v. Iseley,* 203 N. C., 811, 167 S. E., 56; *Walker v. Phelps,* 202 N. C., 344, 162 S. E., 727; *Tolle v. Struve,* 124 Cal. Ap., 263, 12 P. (2d), 61; *Faulkner v. Keene,* 85 N. H., 147, 155 Atl., 195—nevertheless, the courts have construed the law in such manner that the jurisdiction may be protected against mere academic inquiry when the questions presented are altogether moot, arising out of no necessity for the protection of any right or the avoidance of any liability, and where the parties have only a hypothetical interest in the decision of the court. The statute does not require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise. *Allison v. Sharp,* 209 N. C., 477, 481, 184 S. E., 27; *Light Co. v. Iseley, supra; Poore v. Poore,* 201 N. C., 791, 161 S. E., 532.

"It is no part of the function of the courts, in the exercise of the judicial power vested in them by the Constitution, to give advisory opinions, or to answer moot questions, or to maintain a legal bureau for those who may chance to be interested, for the time being, in the pursuit of some academic matter." *Stacy, C. J.,* writing the opinion of the Court in *Poore v. Poore, supra,* cited in Annotation, 87 A. L. R., 1211.

The fundamental principle sought to be preserved is thus stated by *Chief Justice Hughes* in *Ashwander v. Tennessee Valley Authority,* 297 U. S., 287, 324, 80 L. Ed., 688: "The judicial power does not extend to a determination of abstract questions."

Thus the principle which protects the jurisdiction of the Court from the suggested invasions and keeps its decisions within the traditional judicial functions is the presence of a genuine controversy as a jurisdictional necessity.

The Federal Declaratory Judgment Act, 48 Stat. at L., 955, ch. 512, U. S. C. A., Title 28, sec. 400, expressly requires that the proceeding be based on an actual controversy, and that is true of similar statutes in several of the states. While our statute does not expressly so provide,

section 4 of the Act enlarges the specific categories mentioned elsewhere in the statute by making it applicable to "any proceedings . . . in which a judgment or decree will terminate the controversy or remove an uncertainty"; and section 5 empowers the court to refuse to render a declaratory judgment which would not have this effect. However, it is unnecessary to stress the legal inferences which might be drawn from this phraseology, since the point has been directly decided in this State. Quoting from *Light Co. v. Iseley, supra,* p. 820 : "It is required only that the plaintiff shall allege in his complaint and show at the trial, that a real controversy, arising out of their opposing contentions as to their respective legal rights and liabilities under a deed, will or contract in writing, or under a statute, municipal ordinance, contract or franchise, exists between or among the parties, and that the relief prayed for will make certain that which is uncertain and secure that which is insecure. See *Walker v. Phelps,* 202 N. C., 344, 162 S. E., 727."

Indeed, it is uniformly held both in this country and in England that in the absence of any express provision making the existence of an actual controversy necessary to the jurisdiction, this limitation is nevertheless implied and will be observed by the courts. *Cryan's Estate,* 301 Pa., 386, 152 Atl., 675, 71 A. L. R., 1417; *Heller v. Shapiro,* 208 Wis., 310, 342 N. W., 174, 87 A. L. R., 1201; *Denver v. Lynch,* 92 Col., 102, 18 Pac. (2d), 907, 86 A. L. R., 907; see Annotations, 87 A. L. R., 1211, 68 A. L. R., 17, and 50 A. L. R., 45.

In marginal cases the rule may be difficult to apply, because it involves a definition, or at least an appraisal, of the term "controversy," which must, perhaps, depend upon the individual case; but in the case at bar, the Court does not feel that such embarrassment exists. A mere difference of opinion between the parties as to whether plaintiff has the right to purchase or condemn, or otherwise acquire the utilities of the defendant—without any practical bearing on any contemplated action—does not constitute a controversy within the meaning of the cited cases. *Jefferson County Ex Rel. Coleman v. Chilton,* 236 Ky., 614, 33 S. W. (2d), 601.

The proceeding was properly dismissed, and the judgment of the court below is

Affirmed.