TIME WARNER ENTERTAINMENT ADVANCE/NEWHOUSE PARTNERSHIP, PLAINTIFF
v.
TOWN OF LANDIS, NORTH CAROLINA, DEFENDANT

No. COA 13-22

Filed 6 August 2013

**Jurisdiction—subject matter—justiciable controversy—failure to reach agreement**

The Business Court erred by dismissing plaintiff's complex business case based on lack of subject matter jurisdiction. The justiciable controversy was the parties' failure to reach an agreement within 90 days. The case was remanded for further proceedings.

Appeal by plaintiff from order entered 2 October 2012 by Judge Calvin E. Murphy in the North Carolina Business Court. Heard in the Court of Appeals 23 April 2013.

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Reid Phillips, and Hogan Lovells US LLP, by Gardner Gillespie and Paul Werner, for plaintiff-appellant.*

*Poyner Spruill LLP, by Andrew H. Erteschik, for defendant-appellee.*

*Nelson Mullins Riley & Scarborough, by Joseph W. Eason, Christopher J. Blake, and Phillip A. Harris, Jr., for the North Carolina Association of Electric Cooperatives, amicus curiae.*

*David M. Barnes, for ElectriCities of North Carolina, Inc., amicus curiae.*

HUNTER, JR., Robert N., Judge.

Time Warner Entertainment Advance/Newhouse Partnership ("TWEAN") appeals a trial court order dismissing its case for lack of subject matter jurisdiction. Upon review, we reverse and remand.

## I. Facts & Procedural History

In 1979, Vision Cable Communications, Inc. ("Vision") began providing cable television services in the Town of Landis ("Landis"). On 16 June 1984, Vision and Landis entered into a written pole attachment agreement (the "1984 Agreement"). Under the terms of the 1984 Agreement, Landis granted Vision a license to attach transmission cables to Landis' utility poles for $3 per pole per year.[1] Landis charged an additional $1 per year for each metered power supply attachment. The 1984 Agreement required semi-annual payments and was for a period of "not less than one (1) year." After one year, either party could terminate the Agreement by giving six months' written notice.

TWEAN subsequently acquired Vision and became successor-in-interest to the 1984 Agreement. TWEAN delivers cable television and broadband services to businesses and residents in Landis. Nothing in the record indicates Vision, TWEAN, or Landis ever terminated the 1984 Agreement.

In 2008, Landis hired McGavran Engineering, led by Larry McGavran, to: (i) conduct an audit of its pole inventory; and (ii) negotiate a new pole attachment agreement with TWEAN. McGavran completed the audit in November 2008. According to McGavran's audit, Landis had 3,000 utility poles. TWEAN had 2,100 attachments on 1,594 of these poles. The audit stated TWEAN's attachments had 946 safety or technical violations.

While completing the audit, McGavran also drafted a new proposed pole attachment agreement (the "Proposed Agreement") for Landis and TWEAN. On 6 October 2008, McGavran submitted a preliminary draft of the Proposed Agreement to Landis. Between October 2008 and August 2009, McGavran revised the Proposed Agreement. In July 2009, McGavran submitted his revised Proposed Agreement to Landis Town Administrator Reed Linn and Landis Director of Public Works Steve Rowland.

---

1. The rate in the 1984 Agreement is comparable to rates in other areas of North Carolina. For instance, TWEAN contends it pays an average of $5.91 per pole per year to North Carolina investor-owned utilities companies and $4.05 per pole per year to North Carolina telephone companies.

Under the Proposed Agreement, TWEAN would pay $18 per cable for its first rental year (2009), and the rate would increase by $1.40 per year until 2014. TWEAN usually operated two cables per pole. Thus, at the final 2014 rate, TWEAN would pay $50 per pole under the Proposed Agreement.[2] After the first rental year, either party could terminate the Proposed Agreement by providing written notice 90 days prior to the current term's end. The Proposed Agreement also included a $10 per pole permit fee and a $15 per day penalty for failure to comply with applicable safety requirements.

Meanwhile, McGavran also drafted a proposed amendment to Landis' municipal pole attachment ordinance. The proposed amendment authorized Landis to impose a default pole attachment rate of $50 per year for any "telecommunications and cable television provider" that did not sign a "Town approved contract to maintain attachments to the same poles" by 9 April 2009. On 9 March 2009, Landis adopted this amendment.

On 3 August 2009, McGavran sent the Proposed Agreement to TWEAN. He also included a letter stating that "[the Town] expect[s] [the Proposed Agreement] to be executed within 30 days of receipt of this letter. If this does not occur, we will charge you the default rate as stated in our pole attachment ordinance passed last spring." The letter also explained that the change from a per-pole rate to a per-cable rate was "in line with standard procedures within the industry for those attaching entities that do not own poles." Lastly, McGavran promised to send TWEAN the results of an inventory of "poles, attachments, violations and other items" by 17 August 2009. McGavran sent the inventory to TWEAN on 27 August 2009.

On 31 August 2009, TWEAN Senior Director of Construction for the Carolinas Nestor Martin sent a letter to Linn, Landis' Town Administrator, advising Landis to "treat this letter as a request under Section 62-[350] (b) to negotiate a new pole agreement, to include a just, reasonable and non-discriminatory rate." Martin also requested certain cost and valuation data to better evaluate the increased attachment rate. TWEAN then deleted the increased attachment rates from the Proposed Agreement and sent the new version back to Landis.

Over the next few months, TWEAN and Landis negotiated, but failed to reach an agreement. Nothing in the record indicates TWEAN ever

---

2. The $50 proposed rate constitutes a 1,566% increase from the rate in the 1984 Agreement. TWEAN contends that some adjustment may be necessary, but until a consensus is reached it should continue to pay only $3 per pole, the rate from the 1984 Agreement.

paid the increased pole attachment rate in the Proposed Agreement. On 5 January 2010, TWEAN sent Landis a letter requesting mediation. Landis did not respond.

On 19 April 2010, TWEAN filed a complaint in Rowan County Superior Court under N.C. Gen. Stat. § 62-350 for: (i) refusal to negotiate; (ii) violation of the statute's non-discrimination requirement; and (iii) other "issues in dispute." As to its third claim, TWEAN enumerated three specific issues in dispute: (i) Landis' proposed rental rate of $18 per attachment is unreasonable and unjust; (ii) Landis' proposed charge *per cable* rather than *per pole* is unreasonable and unjust; and (iii) Landis' proposed fines for non-conforming attachments are unreasonable and discriminatory.

On 21 April 2010, Chief Justice Parker designated the action a mandatory complex business case. The following day, it was assigned to the North Carolina Business Court. On 4 June 2010, Landis filed an answer.

On 20 December 2010, Landis filed a motion for partial summary judgment as to TWEAN's claims for: (i) refusal to negotiate; and (ii) discrimination. On 9 February 2011, TWEAN filed a reply brief. On 17 February 2011, the Business Court heard Landis' arguments. On 30 June 2011, the Business Court entered an order: (i) granting Landis' motion to dismiss TWEAN's claim for refusal to negotiate; but (ii) denying Landis' motion to dismiss the discrimination claim.

From 18 July to 21 July 2011, the Business Court conducted a bench trial on: (i) the discrimination claim; and (ii) the "issues in dispute." At the close of TWEAN's evidence, the Business Court denied Landis' motion for directed verdict for the other "issues in dispute," but reserved its ruling on the discrimination claim.

On 19 June 2012, the Business Court *sua sponte* raised two concerns about the case: (i) the justiciability of the "issues in dispute;" and (ii) the constitutionality of N.C. Gen. Stat. § 62-350. To this effect, the Business Court requested supplemental briefs discussing: (i) whether TWEAN had standing; (ii) whether there was a "case or controversy;" and (iii) whether N.C. Gen. Stat. § 62-350 violates the separation of powers doctrine and/or is an unlawful delegation of legislative authority. The parties briefed the court on these issues. On 2 October 2012, the Business Court entered an order determining it did not have subject matter jurisdiction because TWEAN did not satisfy the controversy requirement. The Business Court then dismissed the case without prejudice. On 12 October 2012, TWEAN filed timely notice of appeal.

## II. Standard of Review

"Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quotation marks and citation omitted).

## III. Analysis

On appeal, TWEAN argues the Business Court erred in dismissing its case for lack of subject matter jurisdiction because: (i) N.C. Gen. Stat. § 62-350 authorizes TWEAN to enforce its statutory pole attachment rights; or alternatively, (ii) TWEAN faces imminent harm. Plaintiff then argues the trial court's decision improperly nullified N.C. Gen. Stat. § 62-350. Upon review, we reverse and remand.

"Jurisdiction is '[t]he legal power and authority of a court to make a decision that binds the parties to any matter properly brought before it.' " *In re T.R.P.*, 360 N.C. 588, 590, 636 S.E.2d 787, 789-90 (2006) (quoting *Black's Law Dictionary* 856 (7th ed. 1999))(alteration in original). "If a court finds at any stage of the proceedings that it lacks jurisdiction over the subject matter of a case, it must dismiss the case for want of jurisdiction." *Sarda v. City/County of Durham Bd. of Adjustment*, 156 N.C. App. 213, 215, 575 S.E.2d 829, 831 (2003) (quotation marks and citation omitted). A party may not waive [subject matter] jurisdiction." *Reece v. Forga*, 138 N.C. App. 703, 704, 531 S.E.2d 881, 882 (2000).

To satisfy jurisdictional requirements, courts must have both personal jurisdiction and subject matter jurisdiction. *In re T.R.P.*, 360 N.C. at 590, 636 S.E.2d at 790. First, courts "must have personal jurisdiction over the parties to bring [them] into [the] adjudicative process." *Id.* (quotation marks and citation omitted)(first alteration in original). "More importantly for our purposes, the court must also have subject matter jurisdiction, or [j]urisdiction over the nature of the case and the type of relief sought." *Id.* (quotation marks and citation omitted)(alteration in original). "Subject matter jurisdiction is conferred upon the courts by either the North Carolina Constitution or by statute." *Harris v. Pembaur*, 84 N.C. App. 666, 667, 353 S.E.2d 673, 675 (1987) (citing N.C. Const. art. I, § 18).

Two aspects of subject matter jurisdiction are: (i) the standing requirement; and (ii) the controversy requirement. We now discuss each of those in turn.

"Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issue he wants adjudicated." *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 165, 552 S.E.2d 220, 225 (2001). In *Neuse River Foundation, Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 574 S.E.2d 48 (2002), our Court elaborated on North Carolina's "standing" doctrine:

> [Standing] refers to whether a party has a sufficient stake in an otherwise justiciable controversy so as to properly seek adjudication of the matter. *Sierra Club v. Morton*, 405 U.S. 727, 731–32, 92 S.Ct. 1361, 1364–65, 31 L.Ed.2d 636, 641 (1972). The "irreducible constitutional minimum" of standing contains three elements:

> (1) "injury in fact" —— an invasion of a legally protected interest that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan* [*v. Defenders of Wildlife*], 504 U.S. [555,] 560–61 [(1992)].

> North Carolina courts are not constrained by the "case or controversy" requirement of Article III of the United States Constitution. Our courts, nevertheless, began using the term "standing" in the 1960s and 1970s to refer generally to a party's right to have a court decide the merits of a dispute. *See, e.g., Stanley, Edwards, Henderson v. Dept. of Conservation & Development*, 284 N.C. 15, 28, 199 S.E.2d 641, 650 (1973).

*Id.* at 114, 574 S.E.2d at 51–52.

The controversy requirement, on the other hand, focuses on the issue being adjudicated rather· than the party seeking adjudication. *See Creek Pointe Homeowner's Ass'n*, 146 N.C. App. at 165, 552 S.E.2d at 225. Although "North Carolina courts are not constrained by the 'case or controversy' requirement of Article III of the United States Constitution," *Neuse River Foundation, Inc.*, 155 N.C. App. at 114, 574 S.E.2d at 52, our courts still require "the existence of a justiciable . . . controversy." *Prop. Rights Advocacy Group v. Town of Long Beach*, 173 N.C. App. 180, 182, 617 S.E.2d 715, 717 (2005) (quotation marks and citation omitted); *see also Goldston v. State*, 361 N.C. 26, 33, 637 S.E.2d

876, 881 (2006); *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 204, 22 S.E.2d 450, 453 (1942).

A justiciable controversy entails "an actual controversy between parties having adverse interests in the matter in dispute." *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984). To satisfy this requirement:

> [T]he plaintiff shall allege in his complaint and show at the trial that a real controversy, arising out of their opposing contentions as to their respective legal rights and liabilities . . . exists between or among the parties, and that the relief prayed for will make certain that which is uncertain and secure that which is insecure.

*Carolina Power & Light Co. v. Iseley*, 203 N.C. 811, 820, 167 S.E. 56, 61 (1933). "Legal rights and liabilities must rest upon some reasonably settled basis, fixed either by the common law or by statute." *Briscoe v. Henderson Lighting & Power Co.*, 148 N.C. 396, 413, 62 S.E. 600, 607 (1908).

Thus, allegations based on statutory rights can satisfy the controversy requirement. *See Carolina Power & Light Co.*, 203 N.C. at 820, 167 S.E. at 61 (acknowledging that "legal rights and liabilities" can arise "under a statute"); *Briscoe*, 148 N.C. at 413, 62 S.E. at 607. Still, "[o]ur caselaw generally holds that a statute allows for a private cause of action only where the legislature has expressly provided a private cause of action within the statute." *Vanasek v. Duke Power Co.*, 132 N.C. App. 335, 339 n.2, 511 S.E.2d 41, 44 n.2 (1999), *overruled on other grounds by Lovelace v. City of Shelby*, 351 N.C. 458, 526 S.E.2d 652 (2000).

North Carolina's Declaratory Judgment Act expands the controversy requirement by establishing that trial courts not only have jurisdiction over alleged prior violations of rights, but also when litigation over a potential violation "appear[s] unavoidable." *Gaston Bd. of Realtors*, 311 N.C. at 234, 316 S.E.2d at 61. However, the"[m]ere apprehension or the mere threat of an action or a suit is not enough." *Id.* at 234, 316 S.E.2d at 62. "Thus the Declaratory Judgment Act does not 'require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise.' " *Id.* (quoting *Town of Tryon*, 222 N.C. at 204, 22 S.E.2d at 453).

In the present case, TWEAN argues the Business Court has subject matter jurisdiction because TWEAN's allegations satisfy the controversy requirement. We agree.

Since TWEAN's claim arises under N.C. Gen. Stat. § 62-350, we preliminarily discuss the legislative intent behind that statute as part of North Carolina's Public Utilities Act. *See Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) ("The principal goal of statutory construction is to accomplish the legislative intent."). When our legislature drafted the Public Utilities Act, it established, *inter alia*, the following goals: (i) "[t]o provide fair regulation of public utilities in the interest of the public;" and (ii) "[t]o provide just and reasonable rates and charges for public utility services without unjust discrimination, undue preferences or advantages, or unfair or destructive competitive practices." N.C. Gen. Stat. § 62-2(a)(1) and (4) (2011). Thus, the Public Utilities Act endorses regulatory intervention to promote "just and reasonable rates." *See id.*

In light of this legislative intent, we now examine the contours of N.C. Gen. Stat. § 62-350. First, N.C. Gen. Stat. § 62-350(a) establishes that "[a] municipality . . . that owns or controls poles, ducts, or conduits shall allow any communications service provider to utilize its poles, ducts, and conduits at just, reasonable, and nondiscriminatory rates, terms, and conditions adopted pursuant to negotiated or adjudicated agreements." N.C. Gen. Stat. § 62-350(a) (2011).

The statute also allows communications service providers like TWEAN to require municipalities to negotiate for "just, reasonable, and non-discriminatory" pole attachment rates:

> Following receipt of a request from a communications service provider, a municipality or membership corporation shall negotiate concerning the rates, terms, and conditions for the use of or attachment to the poles, ducts, or conduits that it owns or controls. Following a request from a party to an existing agreement made pursuant to the terms of the agreement or made within 120 days prior to or following the end of the term of the agreement, the communications service provider and the municipality or membership corporation which is a party to that agreement shall negotiate concerning the rates, terms, and conditions for the continued use of or attachment to the poles, ducts, or conduits owned or controlled by one of the parties to the agreement.

N.C. Gen. Stat. § 62-350(b) (2011).

Lastly, the statute allows communications service providers to bring suit in Business Court if the parties fail to reach an agreement:

> In the event the parties are unable to reach an agreement within 90 days of a request to negotiate pursuant to subsection (b) of this section, or if either party believes in good faith that an impasse has been reached prior to the expiration of the 90-day period, either party may bring an action in Business Court in accordance with the procedures for a mandatory business case set forth in G.S. 7A-45.4, and the Business Court shall have exclusive jurisdiction over such actions.

N.C. Gen. Stat. § 62-350(c) (2011).

Next, we discuss the types of justiciable controversies N.C. Gen. Stat. § 62-350 contemplates. To this end, we interpret N.C. Gen. Stat. § 62-350 to establish several judicially-enforceable statutory rights. *See Carolina Power & Light Co.*, 203 N.C. at 820, 167 S.E. at 61; *Briscoe*, 148 N.C. at 413, 62 S.E. at 607. For instance, N.C. Gen. Stat. § 62-350 creates a statutory right for both communications service providers and municipalities to establish "just, reasonable, and nondiscriminatory" pole attachment rates within 90 days of a request to negotiate. *See* N.C. Gen. Stat. § 62-350(c) (2011).

Furthermore, the statute expressly creates a private cause of action to enforce these rights. *See Vanasek*, 132 N.C. App. at 338 n.2, 511 S.E.2d at 44 n.2. Specifically, it allows "either party [to] bring an action in Business Court in accordance with the procedures for a mandatory business case." N.C. Gen. Stat. § 62-350(c). Thus, communications service providers satisfy the controversy requirement when they "allege in [their] complaint and show at the trial that a real controversy, arising out of [these statutory rights] . . . exists." *Carolina Power & Light Co.*, 203 N.C. at 820, 167 S.E. at 61; *Briscoe*, 148 N.C. at 413, 62 S.E. at 607.

Here, the Business Court determined it did not have subject matter jurisdiction because TWEAN did not satisfy the controversy requirement. Specifically, the Business Court held TWEAN did not allege: (i) a prior violation of its rights; or (ii) the imminent threat of a violation. Upon review, we conclude the Business Court erred because TWEAN showed a controversy exists under N.C. Gen. Stat. § 62-350.

To this effect, TWEAN alleged a prior violation of its statutory right to establish "just, reasonable, and nondiscriminatory" pole attachment rates within 90 days of a request to negotiate. *See* N.C. Gen. Stat. § 62-350(c). It then presented evidence supporting its allegation. First, TWEAN submitted a request to negotiate to Landis on 31 August 2009. Next, TWEAN negotiated with Landis for more than 90 days. In fact, the

Business Court implicitly acknowledged the parties negotiated when it dismissed.TWEAN's refusal to negotiate claim. Despite these negotiations, the parties failed to reach an agreement. Once 90 days had passed, TWEAN filed its complaint under N.C. Gen. Stat. § 62-350.

Contrary to the Business Court's determination, the controversy here is not the future possibility of increased pole attachment rates. Instead, the controversy arises from the parties' failure to reach an agreement within 90 days. This failure violated TWEAN's right to establish "just, reasonable, and nondiscriminatory" pole attachment rates within 90 days of a request to negotiate. While we make no determination as to whether the pole attachment rates in the Proposed Agreement are "just, reasonable, and nondiscriminatory," we determine there exists a justiciable controversy.

Consequently, the Business Court erred in determining it did not have subject matter jurisdiction. Because we base our decision on TWEAN's first argument, we decline to address its other arguments.

## IV. Conclusion

For the foregoing reasons, we: (i) reverse the trial court's determination that it did not have subject matter jurisdiction; and (ii) remand for further proceedings.

REVERSED and REMANDED.

Judges McGEE and STEPHENS concur.