IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-455

No. COA20-46

Filed 7 September 2021

Utilities Commission, No. M-100, SUB 152

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, DUKE ENERGY CAROLINAS LLC, and DUKE ENERGY PROGRESS, LLC, Appellees,

v.

CUBE YADKIN GENERATION LLC, Appellant.

Appeal by Appellant from Order entered 4 September 2019 by Deputy Clerk A. Shonta Dunston in the North Carolina Utilities Commission. Heard in the Court of Appeals 29 April 2021.

> *The Allen Law Offices, by Dwight W. Allen, Britton H. Allen, and Brady W. Allen, and Lawrence B. Somers, Deputy General Counsel of Duke Energy Corporation, for the Appellees.*
>
> *Brooks, Pierce, McLendon, Humphrey and Leonard, LLP, by Jim W. Phillips, Marcus W. Trathen, and Gisele Rankin, for the Appellant.*
>
> *Burns, Day & Presnell, P.A., by Daniel C. Higgins, for amici curiae North Carolina Eastern Municipal Power Agency, North Carolina Municipal Power Agency Number 1 and ElectriCities of North Carolina, Inc.*
>
> *Nelson Mullins Riley & Scarborough LLP, by Joseph W. Eason, and Michael D. Youth, for amicus curiae North Carolina Electric Membership Corporation.*
>
> *McGuireWoods LLP, by Brett Breitschwerdt and Tracy S. DeMarco, for amicus curiae Virginia Electric and Power Company, d/b/a Dominion Energy North Carolina.*

GRIFFIN, Judge.

¶ 1 Appellant Cube Yadkin Generation, LLC ("Cube"), appeals from an order of the North Carolina Utilities Commission (the "Commission") declaring that Cube's proposed business plan would cause it to be a public utility subject to regulation. Cube contends the Commission erred because its proposed plan falls within the landlord/tenant exemption to public utility regulation. After careful review, we hold that Cube has failed to present a justiciable controversy and vacate the Commission's order.

## I. Factual and Procedural Background

¶ 2 Cube is the owner and operator of four hydroelectric generation facilities located along the Yadkin River near Badin, North Carolina.[1] The Record shows that Cube currently operates as an exempt wholesale generator of electrical energy under a license issued by the Federal Energy Regulatory Commission. Exempt wholesale generators are not considered public-utility companies under federal law. *See* 15 U.S.C. § 79b (2021); 16 U.S.C. § 824 (2021); 18 C.F.R. § 366.1 (2021). Cube uses its hydroelectric generation facilities primarily to generate energy needed for its own internal operations and sells its entire surplus of electrical energy on the wholesale

---

[1] Through an affiliate, Cube also owns transmission lines connecting its facilities to an electric substation located in a commercial area known as the Badin Business Park.

market.

¶ 3    In 2019, as part of an effort to explore additional or alternative uses for the electricity generated by its facilities,[2] Cube devised a plan to redevelop an area of land in Badin known as the Badin Business Park. The Badin Business Park is a commercial area. It served as the location for a large aluminum production plant for almost 100 years prior to the plant's closure in 2007. Cube's hydroelectric generation facilities were previously used to power the aluminum production facility. Two of Cube's four facilities are located within the Badin Business Park. Cube intends to (1) purchase the Badin Business Park; (2) lease the land to prospective technology-based commercial tenants; and (3) supply electricity to those tenants by generating electricity from its own hydroelectric generation facilities located in or nearby Badin Business Park and/or by purchasing additional electricity as needed from the wholesale market (collectively, the "Proposed Plan").

¶ 4    On 8 March 2019, Cube filed a Petition for Declaratory Ruling (the "Petition") with the Commission requesting a declaration that Cube's Proposed Plan qualified for exclusion from public utility regulation under the landlord/tenant exemption in

---

[2] In a separate action before the Commission and this Court, Cube has also sought to sell the output of three of its four hydroelectric generation facilities to Duke Energy Progress, LLC (also a party to the current appeal), under the moniker of a qualifying facility in compliance with the Public Utility Regulatory Policies Act. *See Cube Yadkin Generation, LLC v. Duke Energy Progress, LLC*, 269 N.C. App. 1, 2, 837 S.E.2d 144, 145 (2019). This matter is currently on remand to the Commission from the decision of this Court.

N.C. Gen. Stat. § 62-3(23)(d). Prior to filing the Petition with the Commission, Cube also presented its Proposed Plan to the Public Staff of the Commission, who expressed their support. Appellees Duke Energy Carolinas, LLC, and Duke Energy Progress, LLC (collectively, "Duke"), requested and were allowed to intervene in the Petition proceedings. The Commission also granted a number of other local electric utility monopoly providers the right to participate in the proceedings as *amici*. On 2 May 2019, Duke and the *amici* filed motions and comments in opposition to Cube's Petition. Cube filed a reply comment on 9 May 2019.

¶ 5 On 4 September 2019, the Commission entered an Order Issuing Declaratory Ruling (the "Order") concluding "that Cube's proposed landlord/tenant arrangement . . . would cause Cube to be a public utility" and would not qualify for the landlord/tenant exemption. The Commission denied Cube's Petition with prejudice. Cube timely appealed.

## II. Analysis

¶ 6 Cube contends that the Commission "erred in concluding that Cube does not qualify for the landlord-tenant exemption to 'public-utility' status" due to its misapplication of the governing law and incorrect interpretation of multiples terms or phrases used in N.C. Gen. Stat. § 62-3(23)(d). In response, Duke and its *amici* contend, *inter alia*, that the Commission's decision is void *ab initio* because the Commission and our Court lack jurisdiction to issue an advisory opinion where Cube

has not presented an actual, justiciable controversy.

¶ 7 Cube requested that the Commission issue a declaratory judgment that its Proposed Plan fulfilled the statutory requirements to qualify for exemption from regulation as a public utility. Chapter 62 of the North Carolina General Statutes defines and prescribes the way public utilities are regulated within the state. *See* N.C. Gen. Stat. § 62-2 (2019) (explaining that the availability of electric power is a matter of public policy and vesting the Commission with authority to regulate such availability as a public utility); N.C. Gen. Stat. § 62-3(23) (2019) (defining "public utility"). Section 62-3(23)(d) exempts from the definition of a "public utility" an entity acting in a landlord/tenant relationship:

> Any person not otherwise a public utility who furnishes such service or commodity only to himself, his employees or tenants when such service or commodity is not resold to or used by others.

N.C. Gen. Stat. § 62-3(23)(d)(4) (2019).

¶ 8 "A declaratory judgment may be used to determine the construction and validity of a statute." *Town of Emerald Isle v. State*, 320 N.C. 640, 646, 360 S.E.2d 756, 760 (1987) (citation omitted). "[A] declaratory judgment should issue '(1) when [it] will serve a useful purpose in clarifying and settling the legal relations at issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceeding.'" *Augur v. Augur*, 356 N.C. 582, 588, 573

S.E.2d 125, 130 (2002).

¶ 9        Nonetheless, "neither the Utilities Commission nor the appellate courts of this State have the jurisdiction to review a matter which does not involve an actual controversy." *State ex rel. Utilities Comm'n v. Carolina Water Serv., Inc. of N.C.*, 149 N.C. App. 656, 657–58, 562 S.E.2d 60, 62 (2002). "To satisfy the jurisdictional requirement of an actual controversy, it must be shown in the [petition] that litigation appears unavoidable." *Wendell v. Long*, 107 N.C. App. 80, 82–83, 418 S.E.2d 825, 826 (1992) (citations omitted). "Mere apprehension or the mere threat of an action or suit is not enough." *Id.* at 83, 418 S.E.2d at 826. A declaratory judgment is not a vehicle in which litigants may "come into court and ask for either academic enlightenment or practical guidance concerning their legal affairs." *Lide v. Mears*, 231 N.C. 111, 117, 56 S.E.2d 404, 409 (1949) (citation omitted). Essentially, a party may only request a judgment declaring a particular interpretation of a statute if they are "directly and adversely affected" by application of the statute to their actual circumstances. *See Byron v. Synco Properties, Inc.*, 258 N.C. App. 372, 373, 377, 813 S.E.2d 455, 457, 460 (2018) ("Landowners whose property is not directly and adversely affected by a . . . statute do not have standing to bring a declaratory judgment action to challenge the . . . interpretation of the statute.").

¶ 10       "A universal principle as old as the law is that the proceedings of a court without jurisdiction of the subject matter are a nullity." *Burgess v. Gibbs*, 262 N.C.

462, 465, 137 S.E.2d 806, 808 (1964) (citation omitted). The existence of an actual controversy is a jurisdictional prerequisite to any judicial action based thereon. *See Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 583, 347 S.E.2d 25, 29 (1986). This Court reviews challenges to its jurisdiction *de novo* and may do so for the first time at any stage of the proceedings. *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010).

¶ 11        Cube submitted to the Commission its Proposed Plan which purports to satisfy each of the requirements of section 62-3(23)(d). According to Cube's Petition, Cube has made "[p]reliminary contact" and entered into "active negotiations" with "a number of potential tenants[,]" with whom Cube believes "binding lease agreements *could* be reached" if it can receive a favorable declaratory ruling with respect to its Proposed Plan. (Emphasis added). However, Cube concedes that it has not yet entered into any leasing contracts creating a landlord/tenant relationship, does not currently have any ownership interest in real property in the Badin Business Park, and is not under contract to acquire any real property in Badin Business Park. It appears from the Record that Cube intends to make formal efforts to acquire the very land it intends to develop and lease only after the Commission approves of its Proposed Plan.

¶ 12        Cube has no present interest in the resolution of its question. It is not in a realized adversarial position to Duke. Cube owns and operates four hydroelectric

facilities which *could* be used to provide electric energy in ways that *would* provoke an adversarial relationship with Duke. Those facilities are not currently used in those ways. Cube has no legal duties that demand it conduct acts in compliance which would unavoidably lead to litigation with Duke. Rather, Cube effectively asks this Court to serve as its general counsel, advising whether its plan to purchase real property and embark on a particular business venture is a legal use of its time and resources. *See Mears*, 231 N.C. at 117, 56 S.E.2d at 409 ("The Uniform Declaratory Judgment Act does not license litigants to fish in judicial ponds for legal advice."). In short, the controversy that Cube has asked our Courts and the Commission to decide simply does not yet exist.

¶ 13      We note that Cube repeatedly asserts that the Public Staff of the Commission informed the Commission of its belief that Cube's Proposed Plan proffered a landlord/tenant relationship exempt from public utility regulation. However, interest and participation by the Public Staff in the resolution of a party's question does not bestow jurisdiction upon this Court. In *State ex rel. Utilities Commission v. Carolina Water Services, Inc. of North Carolina*, the Public Staff itself petitioned for a declaratory judgment that certain water service provisions in proposed contractual agreements were unenforceable; this Court nonetheless found no justiciable controversy upon which it could rule. *Carolina Water Servs.,* 149 N.C. App. at 659–60, 562 S.E.2d at 63.

¶ 14        The Dissent correctly states that litigation is not unavoidable where an impediment exists and must be removed before litigation may occur, *City of New Bern v. New Bern-Craven County Bd. of Educ.*, 328 N.C. 557, 561, 402 S.E.2d 623, 626 (1991), but respectfully errs in reaching the conclusion that there is no impediment to future litigation in this case. According to the Dissent, "[w]ere Cube to have proceeded with negotiations with prospective tenants of the proposed full-service lease . . . , there would have been no impediment to litigation against Cube by Duke or other electric providers." This is not the case. There is no indication in the Record before this Court that Cube has the ability to purchase the Baden Business Park now or at any point in the future. Cube's inability to purchase the very land it is proposing to rent to any number of unnamed and uncertain tenants can surely be labeled an "impediment" to future litigation. Because Cube may never be able to proceed with its Proposed Plan, and has nothing binding it to moving forward on that Proposed Plan, there is "a lack of practical certainty that litigation w[ill] commence if a declaratory judgment [is] not rendered" in this case. *Am. Civ. Liberties Union of N.C., Inc., v. State*, 181 N.C. App. 430, 433, 639 S.E.2d 136, 138 (2007). Put another way, there is no certainty that Cube's position is actually adversarial to Duke's exclusive franchise service rights. Cube claims to have a roster of signable players and assuredly possesses the basketballs, the jerseys, and an itch to blow that first whistle, but will never be allowed to play against Duke if the arena owner refuses to allow

Cube on the court.

¶ 15        Cube has shown no evidence that it owns the legal right to lease the real property required to fulfill its Proposed Plan, has shown no evidence that it would be able to acquire that real property, and has presented only encouraging affirmations from potential tenants. "There is nothing to make it appear reasonably certain that if the courts agree with [Cube] and declare [its Proposed Plan exempted from regulation] that [Cube] will engage in the covered activities rather than 'put [the opinion] on ice to be used if and when occasion might arise.'" *Sharpe*, 317 N.C. at 589–90, 347 S.E.2d at 32 (quoting *Tryon v. Power Co.*, 222 N.C. 200, 204, 22 S.E.2d 450, 453 (1942)). We hold that Cube has failed to bring a justiciable controversy before this Court and the Commission below.

## III.    Conclusion

¶ 16        The Record before this Court shows that Cube failed to present the Commission with a justiciable controversy. We vacate the Commission's Order.

VACATED.

Judge DIETZ concurs by separate opinion.

Judge JACKSON dissents by separate opinion.

DIETZ, Judge, concurring.

The simplest way to see the flaw in my dissenting colleague's opinion is to imagine this case arriving directly at the courts, without a trip through the Utilities Commission.

The scenario is this: A business comes to court seeking a declaratory judgment. The business is currently in court fighting over the legality of its business model. While that suit is pending, the business comes up with an alternative idea that would permit it to abandon its first proposal in favor of a new business model. This new approach requires the business to buy land, enter into leases with other businesses, and then begin operating with the new, different business model.

But, the business acknowledges, it hasn't yet bought the land, it hasn't yet entered into leases with the other businesses, and it hasn't even committed to pursuing this alternative business model in lieu of its existing model.

The courts would not entertain a declaratory judgment action concerning the legality of this alternative proposal. The judgment would be an impermissible advisory opinion that could be "put on ice to be used if and when occasion might arise." *Sharpe v. Park Newspapers of Lumberton, Inc.*, 317 N.C. 579, 590, 347 S.E.2d 25, 32 (1986).

The dissent focuses on the fact that *if* Cube decides to pursue its alternative proposal, and *if* it is able to acquire the land to lease, and *if* it finds businesses who want to lease the land, then it is a "practical certainty" that Duke will challenge this

business model through litigation. Thus, the dissent reasons, litigation is unavoidable. But that is true only if one ignores all the ifs.

¶ 22 Businesses routinely find themselves in this situation. They address the uncertainty by relying on the advice of legal counsel, and by drafting contracts that account for the uncertainty through contingency clauses and price concessions. They cannot force the courts to stand in as legal counsel and offer an advisory opinion that carries the force of a binding legal judgment. *Id.*

¶ 23 Nothing about this scenario changes because Cube first brought its declaratory judgment claim to the Utilities Commission instead of directly to court. To be sure, given the complexity of our utilities laws and regulatory regime, it may be good policy to permit the Commission and its staff to issue advisory rulings to firms like Cube. But that policy question is one for the General Assembly. Cube's request for declaratory relief through a judicial ruling under N.C. Gen. Stat. § 1-253 seeks an impermissible advisory opinion from the judicial branch and is not justiciable.

JACKSON, Judge, dissenting.

The majority holds that Cube Yadkin Generation, LLC ("Cube") has failed to present the North Carolina Utilities Commission (the "Commission") with a justiciable controversy, and consequently, it vacates the Commission's Order. I disagree, and therefore respectfully dissent.

## I. Our Declaratory Judgment Act

North Carolina's Uniform Declaratory Judgment Act ("the Act") empowers

> [c]ourts of record within their respective jurisdictions . . . to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. . . . The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

N.C. Gen. Stat. § 1-253 (2019). "The essential distinction between a declaratory judgment action and any other action for relief is that a declaratory judgment action may be maintained without actual wrong or loss as its basis." *McCabe v. Dawkins*, 97 N.C. App. 447, 449, 388 S.E.2d 571, 572 (1990) (citation omitted).

> The Act recognizes the need of society for officially stabilizing legal relations by adjudicating disputes before they have ripened into violence and destruction of the status quo. It satisfies this social want by conferring on courts of record authority to enter judgments declaring and establishing the respective rights and obligations of adversary parties in cases of actual controversies without either of the litigants being first compelled to assume the hazard of acting upon his own view of the matter by violating what may afterwards be held to be the other party's rights or by repudiating what may be subsequently adjudged to be his own obligations.

*Lide v. Mears*, 231 N.C. 111, 117-18, 56 S.E.2d 404, 409 (1949) (internal marks and citation omitted). "The purpose of the Act 'is to settle and afford relief from uncertainty and insecurity, with respect to rights, status, and other legal relations and is to be liberally construed and administered.'" *Am. Civ. Liberties Union of N.C., Inc. v. State*, 181 N.C. App. 430, 432, 639 S.E.2d 136, 138 (2007) (quoting *Walker v. Phelps*, 202 N.C. 344, 349, 162 S.E. 727, 729 (1932)).

¶ 26 However, an action for a declaratory judgment must present an actual controversy for a trial court to have subject matter jurisdiction over it. *Time Warner Ent. Advance/Newhouse P'ship v. Town of Landis*, 228 N.C. App. 510, 514-15, 747 S.E.2d 610, 614 (2013). While "the definition of a 'controversy' . . . depend[s] on the facts of each case, a 'mere difference of opinion between the parties' does not constitute a controversy[,]" *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984) (citation omitted), because "courts have no jurisdiction to determine matters purely speculative, enter anticipatory judgments, declare social status, deal with theoretical problems, give advisory opinions, answer moot questions, adjudicate academic matters, provide for contingencies which may hereafter arise, or give abstract opinions[,]" *Little v. Wachovia Bank & Tr. Co.*, 252 N.C. 229, 243, 113 S.E.2d 689, 700 (1960) (citations omitted), *overruled on other grounds by Citizens Nat'l Bank v. Grandfather Home for Children, Inc.*, 280 N.C. 354, 185 S.E.2d 836 (1972). Additionally, despite sounding similar, the actual controversy

requirement under the Act is less demanding than the "'case or controversy' requirement of Article III of the United States Constitution[.]" *Time Warner Ent. Advance/Newhouse P'ship*, 228 N.C. App. at 514-15, 747 S.E.2d at 614. *See also Comm. to Elect Dan Forest v. Emps. Pol. Action Comm.*, 376 N.C. 558, 599, 2021-NCSC-6 ¶ 73 (2021) ("[W]here a purely statutory or common law right is at issue, . . . a showing of direct injury beyond the impairment of the common law or statutory right is not required.").

¶ 27        Generally speaking, "[t]he court has jurisdiction if the judgment will prevent future litigation." *Little*, 252 N.C. at 244, 113 S.E.2d at 701. "Although it is not necessary that one party have an actual right of action against another to satisfy the jurisdictional requirement of an actual controversy, it is necessary that litigation appear unavoidable." *Gaston Bd. of Realtors*, 311 N.C. at 234, 316 S.E.2d at 61. Our Supreme Court has explained that litigation is not unavoidable if "there [is] an impediment to be removed before court action c[an] be started." *City of New Bern v. New Bern-Craven County Bd. of Educ.*, 328 N.C. 557, 561, 402 S.E.2d 623, 626 (1991). In other words, "a lack of practical certainty that litigation w[ill] commence if a declaratory judgment [is] not rendered" constitutes an impediment to litigation. *Am. Civ. Liberties Union of N.C.*, 181 N.C. App. at 434, 639 S.E.2d at 138-39. Similarly, an impediment to litigation may exist where "the action in controversy has not been performed but is merely speculative, or . . . the ordinance that is the subject of the

suit has not been enacted but merely has been proposed." *Id.* at 434, 639 S.E.2d at 139 (citations omitted). However, "[w]hen no impediment is present, . . . the case is justiciable[.]" *Id.*

Thus, while "the Declaratory Judgment Act does not require the court to give a purely advisory opinion which the parties might, so to speak, put on ice to be used if and when occasion might arise[,]" *Gaston Bd. of Realtors*, 311 N.C. at 234, 316 S.E.2d at 62 (internal marks and citation omitted), or "license litigants to fish in judicial ponds for legal advice . . . [,] [it] enables courts to take cognizance of disputes at an earlier stage than that ordinarily permitted by the legal procedure which existed before its enactment[,]" *Lide*, 231 N.C. at 117-18, 56 S.E.2d at 409.[3] Accordingly, though "[m]ere apprehension or the mere threat of an action or a suit is not enough" to meet the actual controversy requirement of the Act, *Gaston Bd. of Realtors*, 311 N.C. at 234, 316 S.E.2d at 62, "the plaintiff need not have already sustained an injury to file suit under the Act[,]" *Am. Civ. Liberties Union of N.C.*, 181 N.C. App. at 433, 639 S.E.2d at 138.

## II. Standard of Review

---

[3] The Act thus "permits the courts to review certain disputes at an earlier stage than was normally permitted at common law." *State ex rel. Utils. Comm'n v. Carolina Water Serv., Inc.*, 149 N.C. App. 656, 658, 562 S.E.2d 60, 62 (2002). *See also McCabe v. Dawkins*, 97 N.C. App. 447, 449, 388 S.E.2d 571, 573 (1990) ("A declaratory judgment cause of action did not exist at common law because common law only redressed private wrongs and crimes.").

¶ 29    The actual controversy requirement under the Act is an issue of subject matter jurisdiction. *Time Warner Ent. Advance/Newhouse P'ship*, 228 N.C. App. at 514, 747 S.E.2d at 614. Subject matter jurisdiction is "reviewed *de novo* on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010). "Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (internal marks and citation omitted).

### III.    The Justiciability of Cube's Petition

¶ 30    I would hold that Cube's petition presented a justiciable controversy—namely, the issue of whether the full-service lease proposed by Cube, without any usage charge for electricity, would be a sale of electricity within the meaning of Chapter 62 of our General Statutes. Specifically, the justiciable controversy presented by Cube's petition was whether Cube's plan for providing tenants with electricity generated from its own hydroelectric generation facilities located in or nearby the Business Park or obtaining additional electricity to provide to tenants at the Business Park under a full-service lease would qualify Cube for exclusion from public utility regulation under the landlord/tenant exemption contained in N.C. Gen. Stat. § 62-3(23)d. As the Public Staff of the Commission noted in its 9 May 2019 Reply Comments, "[t]he positions taken by Duke and other electric providers make clear that if Cube were to enter leases consistent with its proposal in the absence of a declaratory ruling in its

favor, it would likely face legal action by Duke and other parties. A declaratory judgment will enable the parties to enter contracts and make investments without the uncertainty posed by future litigation."

¶ 31      Were Cube to have proceeded with negotiations with prospective tenants of the proposed full-service lease rather than first seek a declaratory judgment from the Commission that the full-service lease fell within the landlord/tenant exemption contained in N.C. Gen. Stat. § 62-3(23)d, there would have been no impediment to litigation against Cube by Duke or other electric providers: (1) Cube owns the hydroelectric generation facilities at issue and 17 miles of transmission lines that interconnect the hydroelectric facilities with the electric grid and an electric substation at the Business Park; (2) Duke has exclusive franchise service rights under N.C. Gen. Stat. § 62-110 in the geographic area at issue; (3) Duke promptly filed petitions to intervene in Cube's action after learning of it; and (4) Duke thereafter formally and opposed the action and moved for its dismissal. Indeed, I conclude that based on the pleadings and record in this case there is a practical certainty Duke would have commenced litigation against Cube if Cube had obtained site control of the Business Park and entered leases with tenants there consistent with the terms of the proposed full-service lease rather first seeking a declaratory judgment from the Commission. After all, this matter involved investments of potentially tens of millions of dollars. A decision in Cube's favor would allow it to

move forward with the proposal and a decision against it would mean it could move in another direction, without the need to spend further time or money on this proposal. I would therefore hold that Cube's petition presented a justiciable controversy. Accordingly, I respectfully dissent.