EDWARD L. MOORE AND EDWARD L. MOORE, III PARTNERS D/B UNDER THE FIRM
NAME AND STYLE OF MOORE'S SEAFOOD CO. v. DEWEY RAY FRAZIER

No. 823SC772

(Filed 2 August 1983)

**Accord and Satisfaction § 1— insufficient evidence of accord—summary judgment
for defendant improper**

　　A draft from an insurance company with the words "for all claims" failed
to establish an unequivocable intent by either of the parties to settle plaintiffs'
claim against the defendant for the amount of the draft, and summary judg-
ment was improperly entered for defendant on his claim of accord and satisfac-
tion.

APPEAL by plaintiffs from *Peel, Judge.* Judgment entered 4
March 1982 in Superior Court, CRAVEN County. Heard in the
Court of Appeals 17 May 1983.

While traveling down U. S. Highway 17, plaintiffs' large
18-wheel tractor trailer rig, loaded with fish on the way to
market, was hit by defendant's pickup truck as it backed into the
highway. Plaintiffs' tractor trailer was damaged in the amount of
$18,000, and the cargo of fish in the amount of $7,792.26; the
defendant also sustained considerable property damage and plain-
tiffs' driver, not a party to this case, was seriously injured.

Plaintiffs' own insurance carrier, New Hampshire Insurance
Company, paid their collision loss, except for the $1,000 deduct-
ible, but the cargo loss was uninsured. Because of its large
subrogation interest and the circumstances of the accident in-
dicated the defendant was liable, New Hampshire had the ad-
juster who handled the claim for it, James Dwight Gay, with
General Adjustment Bureau, an independent adjusting concern,
contact defendant's liability carrier, Fireman's Fund Insurance
Company, about the loss. During the several telephone conversa-
tions that Gay had with the adjuster for Fireman's Fund, John
Hall, Gay told Hall, among other things, that plaintiffs' damages
exceeded $25,000, defendant was clearly liable, New Hampshire's
subrogation interest amounted to $17,000, and Hall told Gay that
defendant's property damage limits were $10,000. In his last
telephone conversation with Hall July 5, 1979, Gay told Hall that
the plaintiffs and New Hampshire would like to receive Fireman's
Fund's $10,000 as soon as possible because of plaintiffs' uninsured

cargo loss, and that they would negotiate with the defendant personally about the excess later. During none of the conversations was the possibility of settling with the defendant for the policy limits mentioned by either of them.

Gay wrote Hall a letter July 16, 1979, in which he referred to their last telephone conversation and reiterated several of the matters discussed, sent copies of the bills and receipts substantiating the $18,000 collision loss and the $7,792.26 cargo loss, asked for written confirmation that the defendant's policy limits were $10,000, and requested that in paying the $10,000 two drafts be written, one for $7,792.26 to the plaintiffs and the other to New Hampshire for $2,207.74. A few days thereafter, with no accompanying letter or other papers, Fireman's Fund sent Gay a draft for $10,000 payable jointly to Ed Moore Seafood and New Hampshire Insurance Group. On the face of the draft the printed word "For" is followed by the typed words, "all claims"; below these words is a vacant space large enough to accommodate a dozen or more typed words. Defendant's name appears on the draft but once, in a space no more obtrusive than any other labelled "insured," while more than a dozen similar spaces on the face of the draft contain information of different kinds about Fireman's Fund, the draft, the policy, the agent who wrote it, the claim, and the claimant. On the back of the draft is printed language instructing all payees to endorse their names exactly as drawn, that endorsement by payee constitutes a receipt and release for the items mentioned on the face of the draft, and, in bold print, that if payable to a corporation an authorized officer must sign.

As an independent claims adjuster, Gay had processed and settled claims for and with many different insurance companies, including Fireman's Fund, many times. In all of his previous dealings with Fireman's Fund, a compromise settlement of all claims against an insured always entailed the execution of a formal, comprehensive, notarized release and settlement form. Since such a form did not accompnay the draft and nothing had been said about settling with the defendant for his policy limits, and since he had ascertained from the agent who wrote the policy that the limits were $10,000, Gay advised the plaintiffs that Fireman's Fund was just paying its limits and an endorsement of the draft would not affect the rest of the claim against defendant. The

---

---

draft was then endorsed and after it cleared, New Hampshire sent the plaintiffs a check for their $7,792.26.

Some months later, failing to reach a satisfactory agreement with the defendant as to the rest of their damages, plaintiffs sued for $25,792.26, acknowledged a $10,000 payment upon defendant's behalf and asked that defendant be given credit therefor. Initially, in addition to denying liability and counterclaiming for his property damage, the defendant denied paying the $10,000 or authorizing anyone to pay it for him, and moved that the allegation of payment be stricken. Several months later, defendant amended his answer to allege an accord and satisfaction based on plaintiffs' acceptance of the $10,000 draft.

At the close of plaintiffs' evidence, which tended to show all the above, the trial court granted defendant's motion for a directed verdict on the express ground that plaintiffs' own evidence established defendant's affirmative defense of accord and satisfaction as a matter of law.

*Ward and Smith, by Kenneth R. Wooten, for plaintiff appellants.*

*Dunn & Dunn, by Raymond E. Dunn, Jr., for defendant appellee.*

PHILLIPS, Judge.

The legal principles that govern this appeal are few and explicit. In considering a defendant's motion for a directed verdict at the close of plaintiff's evidence, the evidence admitted at trial, whether competent or not, must be accepted as true and viewed in the light most favorable to the plaintiff. *Jenkins v. Starrett Corp.*, 13 N.C. App. 437, 186 S.E. 2d 198 (1972). Simply put, an accord is an agreement to settle a disputed claim for less or something other than what one party claims is due from the other; a satisfaction is the execution or performance of the agreement so made. 1 C.J.S. *Accord and Satisfaction* § 1 (1936); *Walker v. Burt*, 182 N.C. 325, 109 S.E. 43 (1921). Establishing an accord and satisfaction affirmative defense as a matter of law requires evidence that permits no reasonable inference to the contrary and that shows the "unequivocal" intent of one party to make and the other party to accept a lesser payment in satisfaction and dis-

charge of a larger claim. *Allgood v. The Wilmington Savings & Trust Co.*, 242 N.C. 506, 515, 88 S.E. 2d 825, 831 (1955).

Applying these principles to the record below, it is manifest that the evidence fails to establish an unequivocal intent by either of the parties, much less both, to settle plaintiffs' $25,000 plus claim against the defendant for Fireman's Fund's $10,000 draft.

First of all, the draft itself, the primary basis in the record for determining the state of mind of either the defendant or Fireman's Fund when it was tendered, is incomplete and ambiguous on its face. The meaning of the words "For all claims" cannot be ascertained from the instrument itself, which contains no explanatory or qualifying information with respect thereto. Obviously, the words could mean all of plaintiffs' and New Hampshire's claims against Fireman's Fund generally, all their claims against Fireman's Fund under the policy referred to, or all their claims against the insured defendant, Dewey Ray Frazier. And, to say the least, this uncertainty as to what the words meant to the parties at the time is not diminished by the fact that several months went by after the suit was filed before defendant apparently decided that the words meant all of plaintiffs' claims against defendant and amended his answer to plead accord and satisfaction. On the other hand, the evidence abundantly and clearly shows that plaintiffs had no intention whatever of compromising their claim against the defendant for Fireman's Fund's $10,000 draft, and, for that matter, had not even considered doing so, since compromising plaintiffs' claim for any lesser amount had been neither proposed nor discussed. Their contention that the draft only settled Fireman's Fund's policy limits obligation was a question of fact for the jury, rather than one of law for the court.

What complexion the evidence will have when Fireman's Fund's version of the events that occurred is added remains to be seen. But since the writing is ambiguous and the intent of the parties cannot be ascertained from its contents, relevant parol evidence will be both appropriate and necessary. *Root v. Allstate Insurance Co.*, 272 N.C. 580, 158 S.E. 2d 829 (1968). During the first trial some such evidence was properly admitted, but other such evidence, equally relevant, was not, including proof that in settling the personal injury claim of plaintiffs' driver against the

defendant because of the same accident, Fireman's Fund required him to sign a comprehensive, notarized form releasing all and sundry persons and organizations for all claims, injuries and damages, past, present, and prospective.

New trial.

Judges HEDRICK and WELLS concur.