Chambers v. Moses H. Cone Mem'l Hosp., 2017 NCBC 22.

| | |
|---|---|
| STATE OF NORTH CAROLINA<br><br>COUNTY OF GUILFORD | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION<br>12 CVS 6126 |

CHRISTOPHER CHAMBERS, on behalf of himself and all others similarly situated,

        Plaintiff,

    v.

THE MOSES H. CONE MEMORIAL HOSPITAL; THE MOSES H. CONE MEMORIAL HOSPITAL OPERATING CORPORATION d/b/a MOSES CONE HEALTH SYSTEM and d/b/a CONE HEALTH; and DOES 1 through 25, inclusive,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER & OPINION ON DEFENDANTS' MOTION TO DISMISS AND ROBIN HAYES'S MOTION TO INTERVENE**

1.    THIS MATTER is before the Court on Defendants' Motion to Dismiss Plaintiff's Amended Complaint Pursuant to N.C.R.C.P. 12(b)(1) ("Motion to Dismiss") and on the Motion to Intervene of Robin D. Hayes ("Motion to Intervene") (collectively the "Motions"). For the reasons set forth below, the Court GRANTS the Motion to Dismiss and DENIES the Motion to Intervene.

>*Higgins Benjamin PLLC, by John F. Bloss, and Barry L. Kramer Law Offices, by Barry L. Kramer (pro hac vice), for Plaintiff and Intervener.*

>*Womble Carlyle Sandridge & Rice, LLP, by Philip J. Mohr and Brent F. Powell, for Defendants.*

Gale, Chief Judge.

## I. THE PARTIES

2. Plaintiff Christopher Chambers ("Chambers") is a citizen and resident of Guilford County, North Carolina. Chambers received medical treatment at the Moses Cone Hospital (the "Hospital") in Guilford County, on August 23, 2011. (Am. Class Action Compl. ¶ 25.)

3. Proposed Intervener Robin D. Hayes ("Hayes") is a citizen and resident of Rockingham County, North Carolina. On April 13, 2011, Hayes received medical treatment at Annie Penn Hospital, a Moses Cone hospital in Rockingham County. (Intervener Compl. Robin D. Hayes ("Hayes Compl.") ¶ 4.)

4. The Moses H. Cone Memorial Hospital Operating Corporation ("Moses Cone") is a North Carolina corporation with its principal place of business in Guilford County, North Carolina. The Moses H. Cone Memorial Hospital is the parent holding company of Moses Cone (collectively "Defendants"). (Simms Aff. ¶ 4.)

5. Plaintiff alleges that Does 1 through 25, whose identities are unknown, are each responsible and liable for the claims asserted. (Am. Class Action Compl. ¶ 7.) Plaintiff never amended the complaint to allege the names and capacities of the Doe defendants. Any potential claims against those defendants do not survive the dismissal granted by this Order & Opinion.

## II.   FACTUAL BACKGROUND

### A. Chambers

6.      On August 23, 2011, Chambers had an emergency appendectomy at the Hospital.  (Am. Class Action Compl. ¶ 25.)  Chambers did not have health insurance at that time.  (Am. Class Action Compl. ¶ 25.)

7.      Before he was treated, Chambers signed Moses Cone's emergency-room contract ("Contract"), which all emergency-care patients are required to sign before being treated at any Moses Cone hospital.  (Am. Class Action Compl. ¶¶ 11, 26; *see* Simms Aff. Ex. 2 ("Contract").)  The Contract states that the patient is "financially responsible for, guarantee[s] and agree[s] to pay in full . . . all charges for all services provided."  (Contract 1.)  The Contract specifies that the cost of services will be calculated "in accordance with the regular rates and terms of [Moses Cone] at the time of [the] patient's treatment."  (Contract 1.)  The Contract also specifies that its payment provision applies to all patients, whether the patient is insured or uninsured.  (Contract 1.)

8.      Chambers contends that the Contract does not adequately identify Moses Cone's "regular rates and terms" or state where such rates and terms can be located.  (Am. Class Action Compl. ¶ 15.)  He also contends that, due to the "wide range of [payment] rate schedules for different categories o[f] patients," Moses Cone cannot identify a single set of "regular rates" as referred to in the Contract.  (Am. Class Action Compl. ¶ 15.)  Chambers asserts that he is required to pay only the reasonable value of the services he received.  (Am. Class Action Compl. ¶¶ 16, 27.)

9.     On February 13, 2012, Moses Cone billed Chambers for the services that he received, totaling $14,558.14. (*See* Simms Aff. Ex. 3, at 4.) Chambers contends that the bill was calculated using Moses Cone's Chargemaster rates, which he contends are "grossly inflated rates." (Pl.'s Resp. to Defs.' Mot. Dismiss Am. Compl. 3; *see also* Am. Class Action Compl. ¶ 27.) Chambers contends that the reasonable value of the services for which he was billed was no more than $6,000. (Reply to Countercls. ¶ 13; Class Action Compl. ¶ 31.) As of May 13, 2016, Chambers had paid only $2,820 toward his bill. (Simms Aff. Ex. 4.)

10.     As noted below, Moses Cone sued in the district court to collect the remaining balance of Chambers's bill. On May 18, 2016, Moses Cone dismissed with prejudice all claims and counterclaims that were asserted or could have been asserted against Chambers and his wife. (*See* Def./Countercl. Pl.'s Voluntary Dismissal Prejudice; Simms Aff. Ex. 6.)

B. Hayes

11.     On April 13, 2011, Hayes, who was uninsured at that time, was injured in a car accident and received treatment at Annie Penn Hospital, a Moses Cone affiliate. (Hayes Compl. ¶ 4.) Hayes was subject to Moses Cone's Contract, which required her to pay for the services that she received "in accordance with the regular rates and terms of [Moses] Cone." (Hayes Compl. ¶ 5 (quoting Contract 1).)

12.     Moses Cone billed Hayes $2,692.50 for the services she received. (Hayes Compl. ¶ 6.) Hayes alleges that her bill was calculated using Moses Cone's

Chargemaster rates, which she, too, contends are rates much higher than the reasonable value of the services she received. (Hayes Compl. ¶¶ 5–7.)

13. Hayes retained an attorney to assist her in recovering for the personal injuries she sustained as a result of the car accident. (Berry Aff. ¶ 2, Ex. A.) On June 14, 2011, MedPay Assurance, LLC, Moses Cone's collection agency, gave notice to Hayes's attorney in the personal injury claim that Moses Cone was placing a lien on Hayes's recovery, if any, for her personal injury claims. (Hayes Compl. ¶ 8; Berry Aff. Ex. A.)

14. After negotiating with Hayes's attorney, Moses Cone agreed to discharge Hayes's total obligation if she paid $2,423.25, which was 10% less than her original bill. (Hayes Compl. ¶ 9.)

15. Hayes agreed and paid Moses Cone $2,423.25, and her remaining balance was discharged. (Hayes Compl. ¶ 10.) However, Hayes contends that the amount she was required to pay was still substantially more than Moses Cone's "'regular rates' for the emergency-care treatment she received." (Hayes Compl. ¶ 10.)

16. As of May 2016, Moses Cone was in the process of revising its Contract, specifically to eliminate the phrase "regular rates and terms," which is the provision at issue in this action. (Simms Aff. ¶ 13.)

### III. PROCEDURAL HISTORY

17. On May 11, 2012, Chambers filed a Class Action Complaint against Defendants, asserting six causes of action, including breach of contract, breach of the

covenant of good faith and fair dealing, constructive trust, declaratory judgment, restitution, and injunctive relief. (Class Action Compl. ¶¶ 41–58.)

18. On May 31, 2012, Moses Cone, which had not yet been served with the Class Action Complaint, brought an action in the Guilford County District Court against Chambers and his wife for breach of contract, quantum meruit, and unjust enrichment arising from Chambers's failure to pay his bill. (*See* Simms Aff. Ex. 5.)

19. On August 3, 2012, Defendants filed their Answer, and Moses Cone asserted counterclaims against Chambers and his wife for breach of contract and unjust enrichment, and moved to consolidate the two actions. The district court action was dismissed before the Court ruled on the motion to consolidate.

20. On September 4, 2012, Chambers filed his reply to Moses Cone's counterclaims.

21. On September 13, 2012, Defendants filed a Motion for Judgment on the Pleadings.

22. On September 19, 2012, Hayes filed a Motion to Intervene as a named plaintiff in this action, along with a notice of designation. The case was designated as a mandatory complex business case on September 20, 2012, and assigned to the Honorable Calvin Murphy on September 28, 2012.

23. On September 27, 2013, the Court entered an order deferring ruling on the Motion to Intervene until the Court determined whether to allow class certification.

24. On June 24, 2014, the Court partially granted Defendants' Motion for Judgment on the Pleadings and dismissed all of Chambers's claims with prejudice except his claims for breach of contract and breach of the covenant of good faith and fair dealing.

25. On July 2, 2014, the case was reassigned to the undersigned following Judge Murphy's retirement. The Court then held a status conference at which the parties agreed to informally stay further proceedings in this case until the Court issued an opinion on related matters in *Hefner v. Mission Hospital, Inc.*, No. 12 CVS 3088.

26. On December 15, 2015, the Court entered its order dismissing *Hefner*, concluding that the plaintiff's claim was moot because "there [wa]s no longer an actual controversy between" the hospital and the plaintiff, since the hospital "unequivocally bound itself to seek no payment from" the plaintiff. *Hefner v. Mission Hosp., Inc.*, No. 12 CVS 3088, 2015 NCBC LEXIS 115, at *15 (N.C. Super. Ct. Dec. 15, 2015). The Court dismissed the appeal from that order on February 29, 2016. *See Hefner v. Mission Hosp., Inc.*, No. 12 CVS 3088, 2016 NCBC LEXIS 21, at *5 (N.C. Super. Ct. Feb. 29, 2016).

27. On April 1, 2016, the Court reactivated this case. Chambers then filed his Amended Class Action Complaint ("Amended Complaint"). The Amended Complaint seeks a declaratory judgment that the payment provision of Moses Cone's Contract contains an open price term, that Moses Cone is prohibited from charging uninsured patients Chargemaster rates for emergency-room care, and that Moses

Cone may collect only reasonable payments for the emergency-room care given to Chambers and members of the class. (Am. Class Action Compl. ¶¶ 40–41.)

28. Defendants filed their Motion to Dismiss on May 19, 2016, after dismissing the claims for the remaining balance of Moses Cone's bill on May 18, 2016.

29. On July 29, 2016, Hayes filed a supplemental brief in support of her Motion to Intervene, and a revised intervener complaint, asserting claims for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) constructive trust, and (4) restitution.

30. On October 5, 2016, the Court held a hearing on the Motion to Dismiss and Motion to Intervene. The Motions are now ripe for disposition.

## IV. LEGAL STANDARD

31. "Because a moot claim is not justiciable, and a trial court does not have subject matter jurisdiction over a non-justiciable claim, mootness is properly raised through a motion under . . . Rule 12(b)(1)." *Yeager v. Yeager*, 228 N.C. App. 562, 565, 746 S.E.2d 427, 430 (2013). When determining whether to grant "a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), a trial court may consider and weigh matters outside the pleadings." *Dep't of Transp. v. Blue*, 147 N.C. App. 596, 603, 556 S.E.2d 609, 617 (2001). Specifically, the Court can examine facts that have developed after the action was filed, because generally, a claim should be dismissed "[i]f the issues before a court . . . become moot at any time during the course of the proceedings." *In re Peoples*, 296 N.C. 109, 148, 250 S.E.2d 890, 912 (1978).

## V. ANALYSIS

### A. Chambers's Claim Is Moot Because There Is No Longer a Controversy Between the Parties, and the Case Does Not Fit Within an Exception That Allows a Moot Claim to Proceed.

### (1) Chambers's claim is moot.

32. Chambers seeks a declaratory judgment that Moses Cone's Contract "contains an 'open' price term," that the open price term does not allow Moses Cone to bill uninsured patients the Chargemaster rates for its services, and that Chambers and the class members are liable to Moses Cone only for the reasonable value of the services provided. (Am. Class Action Compl. ¶¶ 40–42.) Defendants contend that Chambers's claim is moot and should be dismissed.

33. "[F]or the Court to have jurisdiction over a declaratory judgment claim, there must be a justiciable case or controversy." *Hefner*, 2015 NCBC LEXIS 115, at *14 (citing *Time Warner Entm't Advance/Newhouse P'ship v. Town of Landis*, 228 N.C. App. 510, 515, 747 S.E.2d 610, 614 (2013)). The North Carolina Supreme Court has held that "courts have jurisdiction to render declaratory judgments only when the pleadings and evidence disclose the existence of an *actual controversy* between parties having adverse interests in the matter in dispute." *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234, 316 S.E.2d 59, 61 (1984) (emphasis added). While "the definition of a 'controversy' must depend on the facts of each case, '[a] mere difference of opinion between the parties' does not constitute a controversy within the meaning of the Declaratory Judgment Act." *Id.* (alteration in original) (quoting *Town of Tryon v. Duke Power Co.*, 222 N.C. 200, 205, 22 S.E.2d 450, 453 (1942)). If the

Court's ruling will not have a "practical effect on the existing controversy," but will instead simply result in the Court deciding "abstract propositions of law," then the claim is moot and ordinarily should be dismissed. *Lange v. Lange*, 357 N.C. 645, 647, 588 S.E.2d 877, 879 (2003) (first quoting *Roberts v. Madison Cty. Realtors Ass'n*, 344 N.C. 394, 398–99, 474 S.E.2d 783, 787 (1996); then quoting *In re Peoples*, 296 N.C. at 147, 250 S.E.2d at 912).

34.     In *Hefner v. Mission Hospital, Inc.*, the Court dismissed an action in which the plaintiff sought a declaratory judgment that the hospital's contract contained an open price term, that the contract did not allow the hospital to bill emergency-care patients at its Chargemaster rates, and that the class members were required to pay only the reasonable value of the services provided. *Hefner*, 2015 NCBC LEXIS 115, at *6. The hospital "unequivocally bound itself to seek no payment from [the plaintiff], and [the plaintiff] . . . conceded that the services [the hospital] rendered to him had some reasonable value, yet he paid only a fraction of that value." *Id.* at *15. Therefore, the claim was moot, because "there [wa]s no longer an actual controversy between" the parties. *Id.*

35.     Similar to the hospital defendant in *Hefner*, Moses Cone has voluntarily dismissed with prejudice its collection action against Chambers, meaning that Moses Cone has no right to recover any additional payments from Chambers. (*See* Simms Aff. Ex. 1.) Chambers admits that he received medical treatment and that he has not paid the total amount billed. (*See* Reply to Countercls. ¶¶ 5, 14.) In fact, Chambers paid only $2,820, even though he recognized that the reasonable value of the services

he received may have been as much as $6,000. (*See* Simms Aff. Ex. 4; Class Action Compl. ¶ 31.) Because a declaratory judgment regarding the price term in Moses Cone's Contract would not resolve an active dispute between Chambers and Defendants, Chambers's claim is moot.

### (2) Chambers's claim does not fit within one of the narrow exceptions that permit a court to adjudicate a moot claim.

36. Generally, if a claim is moot, it will be dismissed. *Thomas v. N.C. Dep't of Human Res.*, 124 N.C. App. 698, 705, 478 S.E.2d 816, 820–21 (1996), *aff'd*, 346 N.C. 268, 485 S.E.2d 295 (1997). Chambers contends that, even if his claim is moot, it should not be dismissed, because it falls within four of the five established exceptions that allow a moot claim to survive.

37. There are five "well-known exceptions" where courts will not dismiss a moot claim: (1) the defendant has voluntary ceased an illegal practice, (2) the action is capable of repetition yet evading review, (3) the claim contains an issue of public interest, (4) the class action claims are not moot, and (5) the action involves collateral legal consequences. *Id.*

38. Chambers first contends that Moses Cone cannot circumvent judicial review of the Contract by voluntarily dismissing its collection action against Chambers. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a . . . court of its power to determine the legality of the practice." *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 286, 293, 517 S.E.2d 401, 405 (1999) (alteration in original) (quoting *Thomas*, 124 N.C. App. at 706, 478 S.E.2d at 821). Therefore, where Defendants "cease[ ] their practices and

secure[ ] dismissal of the pending litigation" but are then "free to return to [their] old ways," the Court can still adjudicate the case. *Thomas*, 124 N.C. App. at 706, 478 S.E.2d at 821 (third alteration in original) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)) (declining to dismiss a moot claim because, although the defendant voluntarily ceased its illegal conduct, it conceivably could have resumed the illegal conduct after the claim was dismissed); *see also, e.g., City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) (explaining that a moot claim was not dismissed because "the city's repeal of the objectionable language would not preclude it from reenacting precisely the same provision if the District Court's judgment were vacated").

39.     This exception does not apply to the facts of this case, first because Chambers does not contend that Moses Cone engaged in illegal conduct; instead, he challenges the enforceability and validity of Moses Cone's Contract. Further, Moses Cone has dismissed all claims against Chambers with prejudice. Finally, Moses Cone is changing the terms of its Contract and its billing practices due to the vast changes in healthcare law since 2010, making any interpretation of the former Contract's payment provision not controlling as to any future claim. (*See* Simms Aff. ¶ 13.)

40.     Chambers next contends that the Court can address the merits of his moot claim because the claim falls within the capable of repetition yet evading review exception, which "applies when: '(1) the challenged action [is] in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [is] a reasonable expectation that the *same complaining party* would be subjected to *the same action*

again.'" *Anderson v. N.C. State Bd. of Elections*, __ N.C. App. __, 788 S.E.2d 179, 185 (2016) (alterations in original) (emphasis added) (quoting *130 of Chatham, LLC v. Rutherford Elec. Membership Corp.*, __ N.C. App. __, 771 S.E.2d 920, 926 (2015)). To satisfy the second element, "there must be a 'reasonable expectation' or a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). "[A] mere physical or theoretical possibility [is not] sufficient to satisfy the test . . . ." *Id.* (second alteration in original) (quoting *Murphy*, 455 U.S. at 482).

41.     This action does not fit within the narrow "evading review" exception. Moses Cone's billing practices are not temporary. In each case where Moses Cone attempts to collect on outstanding bills based on the Contract, the patient could challenge the validity of the Contract, and Moses Cone's billing practices would be subject to review. Additionally, there is no reasonable expectation that any action will reoccur between Moses Cone and Chambers, because Moses Cone has dismissed with prejudice all claims against Chambers in connection with the Contract.

42.     Chambers contends that Moses Cone could continue to evade judicial review of its Contract by "reducing or forgiving the bill" of each patient who challenges their bill, but there is no evidence to support his argument. (Pl.'s Resp. to Defs.' Mot. Dismiss Am. Compl. 9.) Instead, the record shows only that Moses Cone dismissed its claims against Chambers. Perhaps if Moses Cone were to continue to dismiss its collection actions against all patients who challenge the validity of the Contract, the Court could consider whether Moses Cone is taking action to evade

judicial review of its Contract. But at this time, the action does not fit within the narrow capable-of-repetition exception. *See Anderson*, 788 S.E.2d at 185 ("The [United States Supreme] Court has further stated that the capable-of-repetition exception 'applies only in exceptional situations.'" (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983))).

43. Chambers also contends that his claim involves an issue of public interest, and the Court, therefore, has an obligation to decide the case, even if his claim is moot. *Leak v. High Point City Council*, 25 N.C. App. 394, 397, 213 S.E.2d 386, 388 (1975) ("[W]here the question involved is a matter of public interest the court has the duty to make a determination."). However, due to the Patient Protection and Affordable Care Act, Moses Cone is changing its billing practices and revising its Contract, defeating Chambers's public-interest argument. (*See* Simms Aff. ¶ 13;) *Calabria v. N.C. State Bd. of Elections*, 198 N.C. App. 550, 559, 680 S.E.2d 738, 746 (2009) (holding that an election dispute did not fall under the public-interest exception because the controlling statutes in question had been amended). The case does not, on its current facts, raise a public interest issue necessary to avoid mootness.

44. Finally, Chambers contends that this case should not be dismissed because it fits within the "narrow class of cases in which the termination of a class representative's claim does not moot the claims of the unnamed members of the class." *Simeon v. Hardin*, 339 N.C. 358, 371, 451 S.E.2d 858, 867 (1994) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 110 n.11 (1975)).

45.     A class action can continue even though the named plaintiff's claims are mooted "if [the] individual['s] claims become moot *after* a motion for class certification is ruled on—either allowed or denied." *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, No. 15-13069-PBS, 2016 U.S. Dist. LEXIS 49067, at *14 (D. Mass. Apr. 12, 2016) (first citing *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 404 (1980) (holding "that an action brought on behalf of a class does not become moot upon expiration of the named plaintiff's substantive claim, even though class certification has been denied"); then citing *Sosna v. Iowa*, 419 U.S. 393, 400 (1975) (holding that the mooting of the named plaintiff's claim did not moot the class action claims because "the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the named plaintiff]")).  Further, class action claims are not automatically dismissed "where a named plaintiff's individual claim becomes moot before the district court has an opportunity to rule on the certification motion, and the issue would otherwise evade review." *Genesis HealthCare Corp. v. Symczyk*, 133 S. Ct. 1523, 1530 (2013).  In that circumstance, "the certification might 'relate back' to the filing of the complaint," and the case is not dismissed. *Id.* (quoting *Sosna*, 419 U.S. at 402 n.11).

46.     The Court has not been required to rule on a class certification motion. Chambers relies on his argument that class certification could relate back to before his claim became moot.  The United States Supreme Court has clarified that the relation-back exception is triggered "where it is 'certain that other persons similarly situated' will continue to be subject to the challenged conduct and the claims raised

are 'so *inherently transitory* that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'" *Id.* at 1530–31 (emphasis added) (quoting *Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 52 (1991)); *see also, e.g.*, *Gerstein*, 420 U.S. at 110 n.11 (explaining that, because "[p]retrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted," the fact that the class representative's claim is moot does not require dismissal of the entire case); *Simeon*, 339 N.C. at 371, 451 S.E.2d at 867 (explaining that the named representative's "exposure to the district attorney's calendaring authority [wa]s 'by nature temporary,'" and therefore, his moot claim did not have to be dismissed (quoting *Gerstein*, 420 U.S. at 110 n. 11)).

47. "The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course." *Genesis HealthCare Corp.*, 133 S. Ct. at 1531. The United States Court of Appeals for the Ninth Circuit applied the relation-back exception where a plaintiff's claims were not "'inherently transitory' as a result of being time sensitive," but the named plaintiff's claims were nevertheless "'acutely susceptible to mootness' in light of [the defendant's] tactic of 'picking off' lead plaintiffs with a Rule 68 offer to avoid a class action." *Pitts v. Terrible Herbst, Inc.*, 653 F.3d 1081, 1091 (9th Cir. 2011) (alteration in original) (quoting *Weiss v. Regal Collections*, 385 F.3d 337, 347 (3d Cir.

2004), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016)).

48.    Chambers's claim is not "'inherently transitory' as a result of being time sensitive." *Id.* (quoting *Weiss*, 385 F.3d at 347).  There is no record to support the argument that Moses Cone intended to "pick off" Chambers's claim.  The dismissal of all the contract claims and counterclaims precludes any active controversy between Chambers and Defendants.  As Defendants correctly highlight, "[h]ad [Chambers] continued to maintain his breach of contract claims rather than dismiss them, Defendants' dismissal of their breach of contract action would not have mooted [Chambers's] declaratory claim."  (Defs.' Resp. to Pl.'s Mem. Suppl. Authorities 3–4.)  But Chambers no longer has a live claim that warrants his representing an ongoing class.  *See Campbell-Ewald Co.*, 136 S. Ct. at 672 ("[A] would-be class representative . . . must be accorded a fair opportunity to show that certification is warranted" if the class representative still has "a *live claim of her own*." (emphasis added)).

49.    In sum, Chambers's claim does not fit within any of the narrow exceptions that would allow a moot claim to proceed.  Accordingly, his claim is DISMISSED.

## B. Hayes's Motion to Intervene

50.    The Court must now address whether Hayes should be permitted to intervene and become a class representative.  For the reasons explained below, the Court DENIES Hayes's Motion to Intervene.

## (1) Hayes is not entitled to intervene under Rule 24(a)(2).

51.     Hayes first contends that she should be allowed to intervene as of right under Rule 24(a)(2). The Court must allow a party to intervene when the proposed intervener demonstrates that "(1) [the intervener] has a direct and immediate interest relating to the property or transaction, (2) denying intervention would result in a practical impairment of the protection of that interest, and (3) there is inadequate representation of that interest by existing parties." *Virmani v. Presbyterian Health Servs. Corp.*, 350 N.C. 449, 459, 515 S.E.2d 675, 683 (1999).

52.     Hayes cannot intervene as a matter of right because she does not have "a direct and immediate interest" in this case. *Id.* A party has a direct interest in the action if "he will either gain or lose by the direct operation and effect of the judgment." *Strickland v. Hughes*, 273 N.C. 481, 485, 160 S.E.2d 313, 316 (1968) (quoting *Mullen v. Louisburg*, 225 N.C. 53, 56, 33 S.E.2d 484, 486 (1945)). If the proposed intervener's interest is merely "indirect, inconsequential, or . . . contingent," then he cannot intervene as of right. *Id.*

53.     Having reached an agreement to satisfy Moses Cone's lien, Hayes no longer has a valid claim against Moses Cone, and she therefore has no direct interest in this action. Hayes's claims are barred by the defense of accord and satisfaction. As the North Carolina Supreme Court has explained,

> [a]n "accord" is an agreement whereby one of the parties undertakes to give or perform, and the other to accept, in satisfaction of a claim, liquidated or in dispute, and arising either from contract or tort, something other than or different from what he is, or considers himself, entitled to; and a "satisfaction" is the execution or performance, of such agreement.

*Dobias v. White*, 239 N.C. 409, 413, 80 S.E.2d 23, 27 (1954) (quoting 1 C.J.S. *Accord and Satisfaction* § 1). "If the accord is fully performed, the performance satisfies the original claim, and bars a subsequent action to enforce it." *Id.*

54.     Generally, whether there has been an accord and satisfaction may present a question of fact for the jury. However, the Court can find an accord and satisfaction as a matter of law if the evidence "permits no reasonable inference to the contrary" and "shows the 'unequivocal' intent of one party to make and the other party to accept a lesser payment in satisfaction . . . of a larger claim." *Cullen v. Valley Forge Life Ins. Co.*, 161 N.C. App. 570, 577, 589 S.E.2d 423, 429 (2003) (quoting *Moore v. Frazier*, 63 N.C. App. 476, 478–79, 305 S.E.2d 562, 564 (1983)). An accord is voidable if "it was premised upon a misrepresentation not known to [the] plaintiff" at the time the accord was made. *Id.*; *see also id.* at 577, 589 S.E.2d at 430 (precluding the accord-and-satisfaction defense because the defendant intentionally misrepresented that the plaintiff's insurance policy was canceled and that "misrepresentation was the basis upon which the accord was purportedly made").

55.     After Hayes received her treatment from Moses Cone, she was billed $2,692.50 for the services rendered. (Hayes Compl. ¶ 6.) Moses Cone believed and still contends that it was entitled to the total amount billed. Moses Cone's collection agency notified Hayes, through her attorney, that Moses Cone placed a lien on any moneys recovered in Hayes's personal injury settlement for the amount she owed. (*See* Berry Aff. Ex. A.) Hayes's attorney negotiated with Moses Cone's collection agency, and Moses Cone agreed to accept $2,423.25—an amount 10% less than

Hayes's total bill—and to then discharge its lien. (Hayes Compl. ¶ 9; *see also* Mohr Aff. Ex. 3.) The agreement was effective when Hayes paid Moses Cone the negotiated amount of $2,423.25. (Hayes Compl. ¶ 10; *see also* Mohr Aff. Ex. 4.) Hayes and Moses Cone's agreement, combined with Hayes's payment of the discounted amount, constitutes an accord and satisfaction.

56. Hayes contends that the accord and satisfaction is voidable for fraud because Moses Cone misrepresented that the charges in Hayes's bill were the regular rates charged for the services she was provided. Admittedly, "there can be no accord if one of the parties to the accord bases their agreement on a fact *intentionally* withheld by the other party." *Greene v. Hicks*, No. COA04-803, 2005 N.C. App. LEXIS 712, at *13 (N.C. Ct. App. Apr. 5, 2005) (emphasis added). But Moses Cone has not intentionally withheld information to induce Hayes to agree to the accord. To establish an intentional misrepresentation sufficient to void the accord and satisfaction, Hayes must demonstrate that Moses Cone knew the charges did not represent its regular rates, but misrepresented them as such. The record does not support such an argument. Hayes's disputing whether Moses Cone was entitled to the total amount charged does not equate to a showing of an intentional misrepresentation adequate to void the accord and satisfaction. Significantly, Hayes agreed to pay a discounted amount while being represented by counsel who had the opportunity to dispute the validity of the Contract and the amount charged.

57. The parties, both at the hearing and in subsequently filed affidavits, dispute whether Moses Cone had a valid lien when Hayes had not filed a personal

injury action. Hayes contends that Moses Cone's lien was enforceable because North Carolina General Statute section 44-49 permits a hospital to attach a lien to any funds recovered as a result of a personal injury claim, whether or not there was litigation. (*See* Berry Aff. ¶ 6.) The argument would become relevant only if Moses Cone relied on the voluntary-payment doctrine. Here, Hayes's claims are barred by the doctrine of accord and satisfaction.

58.     In sum, Hayes cannot intervene as a matter of right because she does not have a direct interest in this action due to her claims being barred by accord and satisfaction.

### (2) Hayes is not permitted to intervene under Rule 24(b)(2).

59.     Hayes also contends that that the Court should exercise its discretion to allow her to intervene as a permissive intervener pursuant to Rule 24(b)(2). A third party "may be permitted to intervene in an action (1) [w]hen a statute confers a conditional right to intervene; or (2) [w]hen an applicant's claim or defense and the main action have a question of law or fact in common." N.C. Gen. Stat. § 1A-1, Rule 24(b)(1)–(2) (2015). "[P]ermissive intervention by a private party under Rule 24(b) rests within the sound discretion of the trial court." *Virmani*, 350 N.C. at 460, 515 S.E.2d at 683. "In exercising its discretion the court *shall* consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." N.C. Gen. Stat. § 1A-1, Rule 24(b)(2) (emphasis added).

60.     Permissive intervention is appropriate when "the proposed intervener has a claim against defendant similar to that asserted by plaintiff." 1 G. Gray Wilson,

*North Carolina Civil Procedure* § 24-4, at 24-8 (3d ed. 2015). However, "[a] mere general interest . . . in the property or transaction involved in a lawsuit will not warrant permissive intervention." *Id.* When considering whether the intervention will unduly delay the litigation, courts consider if the intervener's claims raise collateral or extrinsic issues. Construing the essentially identical Federal Rule 29(b)(2), a federal district court noted that a motion for permissive intervention "may be denied if the intervener raises collateral or extrinsic issues, even though the petition presents a common question of law or fact." *City of Rockford v. Sec'y of Hous. & Urban Dev.*, 69 F.R.D. 363, 366 (N.D. Ill. 1975) (denying a third party's motion for permissive intervention, even though it presented a common question of law or fact, because the third party's breach of contract claim against the defendant was "clearly collateral to the principal issues" between the plaintiff and the defendant). The Court finds this reasoning applicable here.

61. As noted above, Hayes no longer has a direct interest in the declaratory judgment action against Defendants because all her claims are barred by the doctrine of accord and satisfaction. Hayes also seeks to pursue four additional claims: (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, (3) constructive trust, and (4) restitution. (Hayes Compl. ¶¶ 14–28.) These claims raise collateral issues not necessary to any declaratory judgment claim on behalf of a putative class and have all been previously dismissed from this action. For these reasons, the Court, in its discretion, denies Hayes's Motion to Intervene under Rule 24(b)(2).

## VI. CONCLUSION

62.     For the foregoing reasons, the Court hereby

    1)     GRANTS Defendants' Motion to Dismiss; and

    2)     DENIES Hayes's Motion to Intervene.


IT IS SO ORDERED, this the 13th day of March, 2017.


                        /s/ James L. Gale
                        James L. Gale
                        Chief Business Court Judge