United Therapeutics Corp. v. Roscigno, 2025 NCBC 25.

STATE OF NORTH CAROLINA

DURHAM COUNTY

UNITED THERAPEUTICS
CORPORATION and LUNG
BIOTECHNOLOGY PBC,

Plaintiffs,

v.

ROBERT ROSCIGNO and
LIQUIDIA TECHNOLOGIES, INC.,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
24CV003755-310

**ORDER AND OPINION ON
DEFENDANTS' MOTION TO DISMISS**

1.     **THIS MATTER** is before the Court on Defendants' Motion to Dismiss Plaintiffs' Complaint (the Motion) pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure (the Rule(s)), (ECF No. 14).

2.     The Court, having considered the Motion, the related briefing, and the arguments of counsel at a hearing on the Motion held 19 December 2024, concludes for the reasons stated below that the Motion should be **DENIED**.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Eric M. David, Gabrielle L. Motsinger, Jim W Phillips, Jr., and Kasi W. Robinson; Goodwin Procter LLP, by William C. Jackson; and McDermott Will & Emery LLP, by Douglas H. Carsten, Arthur P. Dykhuis, Katherine Pappas, Courtney Seams, and Lillian J. Spetrino, for Plaintiffs United Therapeutics Corporation and Lung Biotechnology PBC.*

*McGuire Woods LLP, by Mark E. Anderson, Corinne S. Hockman, Kyle S. Smith, and David E. Finkelson, for Defendant Robert Roscigno.*

*Parker Poe Adams & Bernstein LLP, by Stephen V. Carey, Corri A. Hopkins, and Andrew P. Tabeling; and Cooley LLP, by Jonathan Davies, Phillip Morton, and Sanya Sukduang, for Defendant Liquidia Technologies, Inc.*

Earp, Judge.

## I. FACTUAL BACKGROUND

3.     The Court does not make findings of fact when ruling on a motion to dismiss.  It recites below the factual allegations in the Complaint that are relevant to the Motion before the Court.

4.     Plaintiff United Therapeutic Corporation (UTC) is a public benefit corporation that "researches and develops treatments for cardiovascular and pulmonary diseases, pediatric cancers, and other orphan diseases."  (Compl. ¶¶ 1, 9, ECF No. 2.)  Plaintiff Lung Biotechnology PBC is a wholly-owned subsidiary of UTC.  (Compl. ¶ 2.)

5.     Relevant to the instant dispute, UTC develops drugs for the treatment of pulmonary arterial hypertension (PAH), including an inhaled treprostinil treatment marketed as Tyvaso® and an injection-based treprostinil treatment marketed as Remodulin®.  (Compl. ¶¶ 10, 18.)

6.     In March 1997, UTC hired Defendant Robert Roscigno (Roscigno) as a Clinical Research Scientist, subject to an employment agreement.  (Compl. ¶¶ 11−12; *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 21CVS004094-310 [*UTC I*], ECF No. 212.1 [1997 Employment Agreement].)[1]   Under the 1997 Employment Agreement, Roscigno agreed not to:

---

[1] UTC did not attach the 1997 Employment Agreement or the subsequent 2007 Employment Agreement to the Complaint.  However, these Agreements have been publicly filed on the Court's docket in a related matter, (*see UTC I*, ECF Nos. 212.1, 212.3), and "[a] trial court may properly take judicial notice of its own records in any prior or contemporary case when the matter noticed has relevance."  *BB&T Boli Plan Tr. v. Mass. Mut. Life Ins. Co.*, 2016 NCBC LEXIS 36, at **27 (N.C. Super. Ct. Apr. 29, 2016) (cleaned up).

publish, disclose or use for [his] own benefit or for the benefit of a business or entity other than [UTC], any secret or confidential matter, or proprietary or other information not in the public domain which was acquired by [him] during employment, relating to [UTC's] businesses, operations, customers, suppliers, products, employees, financial affairs, trade or industrial practices, trade secrets, technology, know-how or intellectual property.

(1997 Employment Agreement § 4; Compl. ¶ 13.)

7.     In March 2007, Roscigno was promoted to President of Lung Rx, Inc.[2] and entered into a new employment agreement, which superseded the 1997 Employment Agreement.  (Compl. ¶ 14; *UTC I*, ECF No. 212.3 [2007 Employment Agreement].)[3]  The 2007 Employment Agreement provides:

Because of the highly specialized and technical nature of the business of [UTC] and the nature and scope of [Roscigno's] employment, [Roscigno] agrees that the entire right, title, and interest, in and to all inventions, discoveries, materials, authorship, derivatives and results and proceeds of [his] efforts in any form or media, including without limitation, all domestic and foreign patents, trade secrets and copyrights in and to all inventions, processes, written works, and other forms of intellectual property ("Intellectual Property"), which [Roscigno] makes, conceives, reduces to practice or develops, in whole or in part, during the term of this Agreement in the furtherance of [UTC's] business (whether or not made during the hours of employment or with the use of [UTC's] materials, facilities or personnel, either solely or jointly with others), or after termination of employment if such Intellectual Property is based upon Confidential Information,[4] shall be solely and exclusively owned

[2] Plaintiff Lung Biotechnology PBC is the successor-in-interest to Lung Rx, Inc.  (Compl. ¶ 11.)  The Court refers to Plaintiffs collectively as UTC.

[3] The 2007 Employment Agreement provides: "[UTC] and [Roscigno] desire this Agreement to supersede and replace on a going-forward basis all previous or existing agreements between [UTC] and [Roscigno] relating to the subject matter covered by this Agreement." (2007 Employment Agreement p. 1.)

[4] The 2007 Employment Agreement defines Confidential Information as "(a) any information or material proprietary to [UTC] or designated as confidential either orally or in writing by [UTC]; and (b) any information not generally known by non-[UTC] personnel; and (c) any information which [Roscigno] should know [UTC] would not care to have revealed to others or used in competition with [UTC]; and (d) any information which [Roscigno] made or makes,

by [UTC], its successors licensees and assigns, and no other individual or entity shall have any interest therein of any kind or nature.

(2007 Employment Agreement § 9 [Ownership Clause]; Compl. ¶ 15.) The 2007 Employment Agreement further provides:

[Roscigno] shall promptly disclose and shall and hereby does assign and transfer to [UTC] all right, title and interest in and to any patentable or unpatentable inventions, discoveries, and ideas which are made or conceived in whole or in part by or on behalf of [Roscigno] in the course of or as a result of his employment hereunder, or that relate directly to, or involve the use of Confidential Information and the Work.

(2007 Employment Agreement § 9(a)(1) [Assignment Clause]; Compl. ¶ 16.) Both the Ownership Clause and the Assignment Clause were intended to survive the termination of Roscigno's employment. (2007 Employment Agreement § 11(g); Compl. ¶ 17.)

8. Roscigno was tasked with leading UTC's development of Tyvaso® and Remodulin®. (Compl. ¶ 18.) Specifically, Roscigno participated in protocol design for clinical students and coordinated the development of UTC's treprostinil program. UTC alleges this work led to the FDA's approval of UTC's new drug applications for Tyvaso®. (Compl. ¶ 19.)

9. UTC further alleges that, while employed, "Roscigno made or conceived, in whole or in part, inventions, discoveries, and ideas relating to the development of inhaled treprostinil[,]" including:

a. Inventions, discoveries, and ideas regarding specific and varying dosages at which inhaled treprostinil could be delivered, including

---

conceived or conceives, developed or develops or obtained or obtains knowledge or access through or as a result of [Roscigno's] relationship with [UTC] (including information received, originated, discovered or developed in whole or in part by [Roscigno]) from the initial date of [Roscigno's] employment with [UTC]." (2007 Employment Agreement § 10(b).)

optimal dosages of treprostinil, and the number of breaths for such dosages;

b.  Inventions, discoveries, and ideas regarding inhalation device configurations and designs that offered improved convenience or risk profiles, including dry powder inhaler products, and the idea that the device design could help increase efficiency of deep lung deposition;

c.  Inventions, discoveries, and ideas regarding the formulation, methods of making, or use or delivery of treprostinil to reduce or limit side effects and permit delivery of greater amounts of treprostinil.

(Compl. ¶ 20.)  UTC contends that these discoveries (Roscigno's UTC Discoveries) constitute its Intellectual Property as defined in the 2007 Employment Agreement. (Compl. ¶ 21.)

10.  Roscigno voluntarily left employment with UTC in June 2007.  In 2011, Roscigno began working for Defendant Liquidia Technologies, Inc. (Liquidia), UTC's direct competitor.  (Compl. ¶ 23.)  Roscigno first joined Liquidia as a consultant before becoming Liquidia's Senior Vice President of Product Development in 2015.  (Compl. ¶¶ 23–24.)

11.  UTC alleges that, in his role as Senior Vice President of Product Development, Roscigno "was instrumental in Liquidia's drug development efforts related to at least LIQ861 (Yutrepia™), Liquidia's product designed to compete with Tyvaso®, including through his contributions to clinical trials and Liquidia's regulatory submissions to the FDA."  (Compl. ¶ 24.)

12.  Liquidia filed provisional patent applications for Yutrepia™ in May, October, and December 2016 and in March 2017.  (Compl. ¶ 25.)  In May 2017, Liquidia filed a Patent Cooperation Treaty (PCT) application, which eventually

issued as U.S. Patent No. 10,898,494 (the '494 patent). The '494 patent is entitled "Dry Powder Treprostinil for the Treatment of Pulmonary Hypertension," and it names Roscigno as an inventor.[5] (Compl. ¶ 25.) It was published on 9 November 2017 and issued on 26 January 2021. (*See* Defs.' Br. Supp. Defs.' Mot. Dismiss Pls.' Compl. [Defs.' Br. Supp.] Ex. A (USPTO webpage for the '494 patent), ECF No. 15.1; U.S. Patent No. 10,898,494 (filed May 5, 2017) (issued Jan. 26, 2021).)[6]

13. UTC alleges that "Roscigno's contribution to the '494 patent involved work relating to clinical development, clinical studies, and FDA approval for LIQ861." (Compl. ¶ 26.) Roscigno assigned his ownership interest in the '494 patent to Liquidia on 3 January 2018. (Defs.' Br. Supp. Ex. B, ECF No. 15.2; USPTO Patent Assignment Cover Sheet (https://legacy-assignments.uspto.gov/assignments/assignment-pat-057305-0901.pdf).)

14. In Spring 2021, during fact discovery in patent litigation between UTC and Liquidia in federal court in Delaware, Liquidia produced documents that resulted in UTC alleging that "Roscigno had improperly taken confidential and trade secret

---

[5] UTC alleges that "other applications also naming Roscigno as an inventor remain pending." (Compl. ¶ 25.)

[6] Although UTC did not attach a copy of the '494 patent to the Complaint, "when ruling on a 12(b)(6) motion, a court may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001).

In addition, the Court may take judicial notice of information that is publicly available on the United States Patent and Trademark Office's website. *See* N.C. R. Evid. 201(b); *Truist Fin. Corp. v. Rocco*, 2024 NCBC LEXIS 62, at \*\*24 n. 62 (N.C. Super. Ct. Apr. 25, 2024) ("Our courts routinely take judicial notice of public filings available on governmental agencies' official websites.").

documents owned by UTC when he left the company ('UTC's Misappropriated Property')." (Compl. ¶ 27.)

15. UTC alleges that its "Misappropriated Property" includes, among other things, Intellectual Property that Roscigno "made, conceived, reduced to practice or developed, in whole or in part, during his employment at UTC in the furtherance of UTC's business, or after he left UTC[,]" and "important documentation and details regarding critical aspects of Roscigno's UTC Discoveries." (Compl. ¶¶ 28–29.)

16. UTC concludes, upon information and belief, that "Roscigno contributed to the '494 patent and the development of LIQ861 by using [his] UTC Discoveries for the benefit of Liquidia and to compete with UTC." (Compl. ¶ 30.)

## II. PROCEDURAL BACKGROUND

17. On 10 December 2021, UTC filed suit in Durham County Superior Court against Roscigno and Liquidia, asserting claims for trade secret misappropriation and unfair and deceptive trade practices. (*UTC I*, ECF No. 3.) That matter was designated as a mandatory complex business case on 13 December 2021, and assigned to the undersigned the same day. (*UTC I*, ECF Nos. 1, 2.)

18. On 10 April 2023, UTC moved for leave to amend its Complaint in *UTC I* to add, among other things, claims for breach of contract and declaratory judgment against Roscigno individually. (*UTC I*, ECF No. 80 (under seal), ECF No. 84 (public version).) The Court denied UTC's request, however, holding that "the proposed new claims for breach of contract and declaratory judgment [came] too late." *United*

*Therapeutics Corp. v. Liquidia Techs., Inc.*, 2023 NCBC LEXIS 88, at *13 (N.C. Super. Ct. July 20, 2023).[7]

19.     On 9 May 2024, UTC filed an application under Rule 3 to extend time to file a complaint, (ECF No. 3).  It then initiated this action against Roscigno for breach of contract and declaratory judgment on 29 May 2024.

20.     Defendants responded by filing the Motion on 30 July 2024.  After full briefing, the Court held a hearing on the Motion on 19 December 2024, at which all parties were represented by Counsel.  (Not. of Hr'g, ECF No. 22.)

21.     The Motion is now ripe for disposition.

### III.     LEGAL STANDARD

22.     Defendants move to dismiss this action in its entirety pursuant to both Rule 12(b)(1) and Rule 12(b)(6).  "A Rule 12(b)(1) motion to dismiss represents a challenge to the trial court's subject matter jurisdiction over a plaintiff's claims." *Marlow v. TCS Designs, Inc.*, 288 N.C. App. 567, 572 (2023); *see also* N.C. R. Civ. P. 12(b)(1).  "In ruling on a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court 'may consider matters outside the pleadings' in determining whether subject matter jurisdiction exists[.]" *Atl. Coast Conf. v. Bd. of Trs. of Fla. State Univ.*, 2024 NCBC LEXIS 53, at **11 (N.C. Super. Ct. Apr. 4, 2024) (quoting *Harris v. Matthews*, 361 N.C. 265, 271 (2007)).  Ultimately, "[t]he plaintiff bears the

---

[7] On 10 August 2023, UTC moved for limited reconsideration of the Court's Order denying its motion to amend.  (*UTC 1*, ECF No. 132.)  The Court denied UTC's motion for reconsideration in an Order and Opinion dated 31 August 2023.  *United Therapeutics Corp. v. Liquidia Techs., Inc.*, 2023 NCBC LEXIS 107 (N.C. Super. Ct. Aug. 31, 2023).

burden of establishing subject matter jurisdiction." *Lau v. Constable*, 2022 NCBC LEXIS 75, at **10 (N.C. Super. Ct. July 11, 2022).

23. "A motion to dismiss under Rule 12(b)(6) 'tests the legal sufficiency of the complaint.'" *Design Gaps, Inc. v. Hall*, 2024 NCBC LEXIS 64, at **6 (N.C. Super. Ct. May 1, 2024) (quoting *Isenhour v. Hutto*, 350 N.C. 601, 604 (1999)). Dismissal of a claim is proper if "(1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco, PLC*, 371 N.C. 605, 615 (2018). Otherwise, "a complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103 (1970) (emphasis omitted).

24. When deciding a motion to dismiss, the Court views the allegations in the light most favorable to the nonmoving party. *Sykes v. Health Network Sols., Inc.*, 372 N.C. 326, 332 (2019). Nevertheless, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005).

## IV.   ANALYSIS

25. In its claim for breach of contract, UTC alleges that Roscigno "breached his employment agreements with UTC because he failed, and has refused, to assign

to UTC his interests in patents obtained by Liquidia that relied upon or benefited from inventions, discoveries, materials, authorship, derivatives and results developed by Roscigno while employed by UTC." (Compl. ¶ 35.) UTC alleges that monetary damages will not afford it "a complete or adequate remedy" and seeks specific performance "requiring Roscigno to assign and transfer to [UTC] all right, title and interest in and to any patentable or unpatentable inventions, discoveries, and ideas which are made or conceived in whole or in part by or on behalf of [Roscigno] in the course of or as a result of his employment at UTC." (Compl. ¶ 38 (internal quotation marks omitted).)

26.     Similarly, Plaintiffs seek a declaratory judgment that "UTC is the owner of any patentable or unpatentable inventions, discoveries, and ideas Roscigno made or conceived while employed by Liquidia to the extent they involve the use of [UTC's] Confidential Information as defined by the 2007 Employment Agreement." (Compl. ¶ 41 (internal quotation marks omitted).)

27.     Defendants argue that the Court lacks subject matter jurisdiction over this action. They further argue that UTC's claims are barred by the statute of limitations. (Defs.' Br. Supp. 1, ECF No. 15.)

A. **Subject Matter Jurisdiction**

28.     Liquidia argues that the Court does not have subject matter jurisdiction over any claim alleged against it because UTC has failed to plead the existence of a justiciable controversy. (Defs.' Br. Supp. 11.) Roscigno also seeks dismissal for lack of standing, arguing that UTC's claims are not redressable. (Defs.' Br. Supp. 16−18.)

1. **Justiciable Controversy**

29. It is well-established that subject matter jurisdiction "depends on the existence of a justiciable case or controversy." *Creek Pointe Homeowner's Ass'n v. Happ*, 146 N.C. App. 159, 164 (2001). "A justiciable controversy entails 'an actual controversy between parties having adverse interests in the matter in dispute.'" *Yoder v. Verm*, 2024 NCBC LEXIS 59, at **3–4 (N.C. Super. Ct. Apr. 19, 2024) (quoting *Time Warner Ent. Advance/Newhouse P'ship v. Town of Landis*, 228 N.C. App. 510, 516 (2013)). A justiciable issue "is real and present as opposed to imagined or fanciful." *Lineage Logistics, LLC v. Nat'l Union Fire Ins. Co.*, 2023 NCBC LEXIS 97, at **12 (N.C. Super. Ct. Aug. 10, 2023) (quoting *Sunamerica Fin. Corp. v. Bonham*, 328 N.C. 254, 257 (1964)).

30. Liquidia argues that "the Complaint does not allege that Liquidia engaged in any actionable misconduct at all, as all of its claims are limited to allegations of Roscigno's breach." (Defs.' Br. Supp. 12.) It is true that UTC's breach of contract claim is asserted only against Roscigno, not Liquidia. (*See* Mem. Opp'n Defs.' Mot. Dismiss [Pls.' Br. Opp'n] 8 n. 3, ECF No. 20.) However, UTC also alleges, upon information and belief, that "before hiring Roscigno, Liquidia was aware of the terms of the 1997 Employment Agreement and the 2007 Employment Agreement between UTC and Roscigno." (Compl. ¶ 23.) Furthermore, it alleges that Liquidia benefitted from Roscigno's improper use of UTC's Confidential Information to make or conceive "patentable or unpatentable inventions, discoveries, and ideas." (Compl. *ad damnum* 2.)

31.     The North Carolina Declaratory Judgment Act (the Act), N.C.G.S. §§ 1-253 *et seq.*, provides that "[a]ny person interested under a . . . written contract . . . or whose rights, status or other legal relations are affected by a . . . contract . . . may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status, or other legal relations thereunder."  N.C.G.S. § 1-254.  The existence of an actual controversy is a jurisdictional prerequisite for a proceeding under the Act.  *Gaston Bd. of Realtors, Inc. v. Harrison*, 311 N.C. 230, 234 (1984).  Thus, a party seeking to have a contract construed under the Act must first have an interest under the contract.  *See Terrell v. Lawyers Mut. Liab. Ins. Co.*, 131 N.C. App. 655, 660 (1998) ("One who seeks to have a written contract construed by way of declaratory judgment must first have an interest thereunder.").

32.     In addition, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim *any interest which would be affected by the declaration*[.]"  N.C.G.S. § 1-260 (emphasis added).  The Act is to be liberally construed.  *See* N.C.G.S. § 1-264 ("This Article is declared to be remedial, its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations, and it is to be liberally construed and administered.").

33.     Liquidia argues that UTC cannot "manufacture a dispute against Liquidia by styling its claim as one for declaratory judgment" because "Liquidia is not a party to Roscigno's employment agreements[.]"  (Defs.' Br. Supp. 12.)  UTC

responds that the declaration it seeks—"i.e., that Roscigno should have assigned to UTC the patent and intellectual property rights that he instead improperly assigned to Liquidia—implicates Liquidia's rights and interests." (Pls.' Br. Opp'n 8.)

34. The Court agrees with UTC. The Complaint alleges that under the 2007 Employment Agreement, Roscigno agreed to "promptly disclose and . . . assign and transfer to [UTC] all right, title and interest in and to any patentable or unpatentable inventions, discoveries, and ideas which are made or conceived in whole or in part by or on behalf of [Roscigno] in the course of or as a result of his employment hereunder, or that relate directly to, or involve the use of Confidential Information and the Work." (Compl. ¶ 16.)

35. The Complaint alleges that "[a] present and real controversy exists between the parties as to whether, under his employment agreements with UTC, Roscigno should be required to assign and transfer to [UTC] all right, title and interest in and to any patentable or unpatentable inventions, discoveries, and ideas he made or conceived while employed by Liquidia because they involve the use of [UTC's] Confidential Information as defined by the 2007 Employment Agreement." (Compl. ¶ 40 (internal quotation marks omitted).)

36. UTC alleges that Roscigno has refused to comply with his contractual obligations and that Liquidia has benefitted, at least with respect to the '494 patent and the development of LIQ861. (Compl. ¶¶ 30, 35, 38.) The Court takes judicial notice of Roscigno's assignment to Liquidia of rights to which UTC has laid claim. (Defs.' Br. Supp. Ex. B, ECF No. 15.2; USPTO Patent Assignment Cover Sheet

(https://legacy-assignments.uspto.gov/assignments/assignment-pat-057305-0901.pdf).)

37.    The question before the Court is not whether Plaintiffs will prevail on their claim, "[i]t is only whether they have identified an actual, genuine controversy." *Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *32 (N.C. Super. Ct. Mar. 15, 2019). Accepting the allegations in the Complaint as true for purposes of the Motion and construing the Act liberally, the Court concludes that UTC has sufficiently pleaded facts to demonstrate a judiciable controversy against both Defendants.[8]

38.    Accordingly, Liquidia's Motion to Dismiss UTC's claim for declaratory judgment is **DENIED**.

### 2. Redressability

39.    "To establish standing in North Carolina, 'a plaintiff must demonstrate . . . the probability that the injury can be redressed by a favorable decision.'" *Atl. Coast Conf.*, 2024 NCBC LEXIS 53, at **22 (quoting *Soc'y for the Hist. Pres. of the Twentysixth N.C. Troops, Inc. v. City of Asheville*, 282 N.C. App. 701, 704 (2022)). "The question of redressability turns not on whether a plaintiff can obtain [its] preferred form of relief but on whether the law provides a remedy for the plaintiff's injury." *Cmty. Success Initiative v. Moore*, 384 N.C. 194, 208 (2023).

---

[8] Roscigno argues that he cannot transfer what he does not have. However, whether Plaintiffs' claim for declaratory judgment against Roscigno is moot because he no longer has any right, title or interest in any patentable or unpatentable inventions, discoveries, and ideas he made or conceived while employed by Liquidia is a question of fact not ripe for decision.

40.     The Court has "broad discretion to fashion equitable remedies to protect innocent parties when injustice would otherwise result." *Kinlaw v. Harris*, 364 N.C. 528, 532 (2010). "The remedy of specific performance is available to compel a party to do precisely what he ought to have done without being coerced by the court." *Howard v. IOMAXIS, LLC*, 2022 NCBC LEXIS 146, at **18 (N.C. Super. Ct. Dec. 5, 2022) (quoting *Hutchins v. Honeycutt*, 286 N.C. 314, 318 (1974)).

41.     Additionally, the imposition of a constructive trust is available as "an equitable remedy 'to prevent the unjust enrichment[9] of the holder of title to, or of an interest in, property which such holder acquired through fraud, breach of some duty or some other circumstance making it inequitable for him to retain it against the claim of the beneficiary of the constructive trust.' " *Lecann v. Cobham*, 2012 NCBC LEXIS 58, at **30 (N.C. Super. Ct. Nov. 7, 2012) (quoting *Roper v. Edwards*, 323 N.C. 461, 464 (1988)).

42.     Roscigno argues that the law does not afford UTC a remedy in this case "because UTC wants the Court to require Roscigno to transfer ownership of things he does not own—namely Liquidia's patents and intellectual property." (Defs.' Br. Supp. 16 (emphasis omitted).)

43.     In its prayer for relief, UTC seeks three remedies for Roscigno's alleged breaches:

---

[9] A plaintiff is not required to assert a claim for unjust enrichment to be awarded a constructive trust. *See Weatherford v. Keenan*, 128 N.C. App. 178, 180 (1997) (explaining that "[t]he trial court's reference to 'unjust enrichment' was an explanation for why it impressed a constructive trust on the improvements to the home . . . not an adjudication of an unjust enrichment claim.").

- That, pursuant to [N.C.G.S.] §§ 1-253−1-267 and North Carolina Rule of Civil Procedure 57, UTC be declared the owner of 'any patentable or unpatentable inventions, discoveries, and ideas' Roscigno 'made or conceived' while employed by Liquidia to the extent they 'involve the use of [UTC's] Confidential Information' as defined by the 2007 Employment Agreement.

- That the Court order Liquidia and Roscigno to execute the requisite documents and perform the requisite actions so as to assign an interest in 'any patentable or unpatentable inventions, discoveries, and ideas' Roscigno 'made or conceived' while employed by Liquidia to the extent they 'involve the use of [UTC's] Confidential Information' as defined by the 2007 Employment Agreement.

- That the Court impose a constructive trust over any 'inventions, discoveries, and ideas' Roscigno 'made or conceived' while employed by Liquidia to the extent they 'involve the use of [UTC's] Confidential Information' as defined by the 2007 Employment Agreement, and over any revenue derived by Defendants therefrom.

(Compl., Prayer for Relief ¶¶ 2−4.)[10]

44. At this stage, the Court cannot foreclose the possibility that specific performance, the imposition of a constructive trust, or both, are appropriate remedies. *See Howard*, 2022 NCBC LEXIS 146, at **20−21 ("[I]t is not for the Court, at [the 12(b)(6)] stage . . . to rule out an interpretation . . . that would support Plaintiffs' demand for specific performance."); *CRH E., LLC v. Berastain*, 2025 NCBC LEXIS 11, at **43 (N.C. Super. Ct. Feb. 4, 2025) (observing that at the 12(b)(6) stage, it remains to be seen whether a constructive trust is appropriate relief).

---

[10] Defendants' arguments focus on Liquidia's ownership of the '494 patent. However, Plaintiffs' demand for relief is broader. UTC alleges that other patent applications name Roscigno as an inventor and remain pending, (Compl. ¶ 25). It seeks a declaration that it is the owner of "*any* patentable or unpatentable inventions, discoveries, and ideas" "made or conceived" by Roscigno with "the use of [UTC's Confidential Information[.]" (Compl. ¶ 41 (emphasis added).)

45. Accordingly, Plaintiffs' allegations are sufficient at this stage to satisfy the redressability requirement and on this basis, the Motion is **DENIED**.

B. **Statute of Limitations**

46. Defendants also argue that UTC's claims are subject to dismissal pursuant to Rule 12(b)(6) because they are barred by the statute of limitations. (Defs.' Br. Supp. 18–24.)

47. "A statute of limitations defense may properly be asserted in a Rule 12(b)(6) motion to dismiss if it appears on the face of the complaint that such a statute bars the claim." *Horton v. Carolina Medicorp*, 344 N.C. 133, 136 (1996). UTC's breach of contract claim is subject to a three-year statute of limitations. N.C.G.S. § 1-52(1). Since UTC's declaratory judgment claim is predicated on Roscigno's alleged breach of contract, it is also subject to a three-year statute of limitations. *Chisum v. Campagna*, 376 N.C. 680, 719 (2021) (The applicable statute of limitations for a declaratory judgment claim is "the one associated with the substantive claim that most closely approximates the basis for the relevant request for a declaration.").

48. "A claim for breach of contract accrues when the plaintiff knew or should have known that the contract had been breached[.]" *Futures Grp., v. Brosnan*, 2022 NCBC LEXIS 150, at **14 (N.C. Super. Ct. Dec. 7, 2022) (quoting *Chisum*, 376 N.C. at 720); *accord Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5–6 (2017) ("We have long recognized that a party must initiate an action within a certain statutorily prescribed period after *discovering its injury* to avoid dismissal of a claim." (emphasis added)); *Black v. Littlejohn*, 312 N.C. 626, 639 (1985) ("[A] statute of

limitations should not begin running against plaintiff until plaintiff has knowledge that a wrong has been inflicted upon him.").

49. Defendants argue that UTC's breach of contract claim accrued, at the latest, on 26 January 2021, when the '494 patent issued listing Roscigno as an inventor. (Defs.' Br. Supp. 19.) They conclude that this action, initiated on 9 May 2024, comes too late.

50. UTC responds that its claim is not premised on Roscigno being one of the inventors of the '494 patent, but rather "on UTC learning that Roscigno breached his UTC Employment Agreements by retaining and providing to Liquidia ideas and intellectual property that Roscigno developed during his employment at UTC[,]" and that "[t]hose breaches were only revealed in May 2021."[11] (Pls.' Br. Opp'n 19; Compl. ¶ 36 ("UTC did not know, and could not reasonably have known, about Roscigno's breaches until Liquidia produced UTC's Misappropriated Property during discovery in the Delaware litigation in 2021.").) UTC further alleges that "[u]ntil discovery was nearly complete in [*UTC I*], UTC did not know, and could not have known, the full scope of Roscigno's use of Roscigno's UTC Discoveries at Liquidia to help develop LIQ861 and the '494 patent[.]" (Compl. ¶ 32.)

51. Dismissal of a claim on statute of limitations grounds is appropriate only "if the bar is disclosed in the complaint." *He Chi v. N. Riverfront Marina & Hotel*

---

[11] While the Complaint alleges that the breaches were revealed to UTC in Spring 2021, the exact date is unclear. At the hearing, Plaintiffs' counsel represented that the earliest possible date the breaches were revealed was 10 May 2021, (Hearing Tr. 33:20−34:12, ECF No. 38), while counsel for Defendants informed the Court that the first filing in the Delaware action suggesting that there had been misappropriation of trade secrets was 4 June 2021. (Hearing Tr. 29:11−21.)

*LLLP*, 2023 NCBC LEXIS 89, at **21−22 (N.C. Super. Ct. July 27, 2023) (citing *Carlisle v. Keith*, 169 N.C. .App. 674, 681 (2005)).  Otherwise, "determining when a plaintiff discovered or should have discovered that [it] has been wronged is a question of fact to be answered by a jury."  *Id.* at **21.

52.    Viewing the allegations in the Complaint as true and drawing all reasonable inferences in UTC's favor, as the Court must do, *New Hanover Cnty. Bd. of Educ. v. Stein*, 380 N.C. 94, 106−07 (2022), the Court cannot conclude at this stage that Plaintiffs' claims are barred by the statute of limitations.  Accordingly, the Motion is **DENIED**.

## V.    CONCLUSION

53.    **WHEREFORE**, for the reasons stated above, Defendants' Motion to Dismiss Plaintiffs' Complaint, (ECF No. 14), is **DENIED**.

**SO ORDERED**, this the 27th day of May, 2025.

/s/ Julianna Theall Earp

Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases